## PAUL LAWRENCE ALLEN *v.* STATE OF MARYLAND.

[No. 9, October Term, 1944.]

*Decided November 15, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, and CAPPER, JJ.

*Michael F. Freedman* and *Robert P. McGuinn,* with whom was *George W. Evans* on the brief, for the appellant.

*E. Edgar Harvey, Assistant Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney of Baltimore City,* with whom were *William C. Walsh, Attorney*

*General,* and *J. Bernard Wells, State's Attorney,* on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

The appellant, Paul Lawrence Allen, was convicted in the Criminal Court of Baltimore City of assault with intent to rape and was sentenced to death. At the trial, which was before the Court without a jury, three exceptions were taken, all being to the admissibility of evidence. Two of these were abandoned at the argument here, leaving the appellant's case dependent entirely on the remaining exception. This relates to the ruling of the trial court requiring the accused, while on the witness stand in his own behalf and under cross-examination, to try on a hat which had been found at the scene of the crime and which, concededly, had been worn by the culprit, whoever he was.

The State claimed that the appellant was the guilty one and, lacking positive identification, undertook to make out a case against him on circumstantial evidence, relying strongly on his alleged ownership of this hat to connect him with the crime. On this point the State's testimony was that when the appellant was arrested he was shown the hat by the police officers and then not only admitted it to be his but, after trying it on, actually claimed it. At the same time he asserted that it was one that had been stolen from him several days before the date of the assault, as mentioned to him by the officers. Another State's witness had directly identified the hat as belonging to the appellant. With that testimony in the record against him he took the stand as a witness in his own behalf and categorically denied ownership of this hat. Immediately, upon cross-examination, came the testimony and the exception which form the basis of this appeal, as follows:

"Q. Now, what kind of a hat was it that you lost? A. Well, the hat I lost was a kind of narrow rimmed hat.

"Q. And it didn't look like this one (indicating) at all? A. No, sir.

"Q. Try this hat on, will you? (Handing hat to the witness.)

"(By Mr. Evans) Just a minute, we object. We object.

"(By the Court) I will overrule the objection and you may have an exception.

"(By the Witness) Put it on?

"(The Court) Yes.

"(By the Witness) O. K. (witness puts hat on head). You see it's too big. It don't fit the way my hat did on that day. If the wind would blow you see where I would have to put it. Which you can see what I would look like in that hat. If I would put my hat on like that my ears would stop it from going down. Besides, I would not buy a hat with that broad brim.

"To which actions of the Court the Counsel for the Defendant then and there excepted."

The issue of law directly raised by this exception is whether or not the Court's ruling thereon was a violation of the guaranty of the Maryland Declaration of Rights, Article 22, "That no man ought to be compelled to give evidence against himself in a criminal case." In *pari materia* with this Article is the Fifth Amendment to the Constitution of the United States, which provides that no person "shall be compelled in any Criminal Case to be a witness against himself."

The determining of this issue leads into a broad field of constitutional law and one wherein authoritative guideposts of precedent are lacking, except along the general outlines of it. For instance, in Maryland there is no adjudicated case at all precisely in point, and the decisions of the courts of other states are widely divergent and often conflicting in applying the general principle. The guaranty itself is found, originally, in the maxim of the common law *"Nemo tenetur se ipsum accusare."* It was reaffirmed in Magna Charta, transmitted to our country as a birthright and protected as such as a part of the Constitution of the United States and of most of the several states. Even without this

express consitutional safeguard, the individual may rely upon the common law to secure him against compulsory self-incrimination. The principle has always been liberally construed in order to give the fullest effect to this immunity, and the protection thus afforded adheres to the accused throughout the trial. *Blum v. State,* 94 Md. 375, 381, 382, 51 A. 26; 22 *C. J. S., Criminal Law,* Sec. 425, p. 659.

As well expressed in the Court's opinion in *Ward v. State,* 27 Okl. Cr. 362, 228 P. 498, 499: "The right intended to be provided by the constitutional provision that no person shall be compelled to give evidence which will tend to incriminate him is so sacred, and the pressure toward its relaxation so great when the suspicion of guilt is strong and the evidence weak and obscure, that it is the duty of the courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion."

While this doctrine is thus firmly embedded in our system of laws and is universally recognized and upheld, the danger of its being misapplied and abused has caused some of the courts to be less liberal in their interpretation of it than others. Consequently, groups of cases have resulted which are distinctly of the borderline variety and furnish no certain rule for applying the principle in any particular case.

There is one point, however, upon which the authorities do agree, and that is that the constitutional guaranty extends to all testimonial utterances by the defendant. They go even further in agreeing that, on the other hand, it has no application to such physical evidential circumstances as may be revealed by an open exhibition of the witness' body or by ordinary observation of his person. He may be ordered to be fingerprinted, for instance, or to stand up in Court for the purpose of identification. *Wharton's Crim. Ev.,* 11th Ed., Vol. 3, p. 1979.

Just how far the prosecution may go beyond this, without invading the rights of the accused, in compelling him to perform some affirmative act to aid the State in

connecting him with the crime, such as trying on a hat or making impressions of his feet for comparative purposes, presents the problem which has caused the various courts to diverge so widely in their decisions, even when the respective factual situations are practically the same.

For example, some courts have held that the constitutional privilege of the accused is not invaded by compelling him to remove his glasses (*Rutherford v. State,* 135 Tex. Cr. R. 530, 531, 121 S. W. 2d 342) ; or by placing a hat on accused at victim's request to supply additional aid to identification (*People v. Pecho,* 362 Ill. 568, 200 N. E. 860) ; or to remove any article of dress which denies that opportunity for observation which has commonly existed for those coming in contact with him, such as his hat or an article of dress hiding his face (*People v. Gardner,* 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741) ; or to remove a shirt to exhibit scars and to don a torn garment found at the scene of the crime for the purpose of showing to the jury the coincidence of the rents therein and the accused's scars. *State v. Oschoa,* 49 Nev. 194, 242 P. 582.

The Court in the case last cited rested its decision on a former decision of that same court in the case of *State v. Ah Chuey,* 14 Nev. 79, 33 Am. Rep. 530, in which the trial court compelled the defendant, against his objection to exhibit his arm so as to show certain tatoo marks thereon to the jury. In passing upon this (the Oschoa) case, the court said [49 Nev. 194, 242 P. 587] : "We are satisfied that the constitutional provision invoked by appellant relates solely to testimonial compulsion," and relied largely upon the case of *Holt v. United States,* 218 U. S. 245, 31 S. Ct. 2, 6, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

In that case a question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. The court held that the objection to this testimony was based upon "an extravagant extension of the 5th Amendment" and over-

ruled it. It is to be noted that the evidence sought was not from the defendant as a witness or from any affirmative act of his in open court, as in the case at bar, but was testimony furnished by another witness.

As against the aforegoing interpretation of the doctrine there is equally respectable authority to the effect that the constitutional privilege is directed not merely to the giving of oral testimony but embraces as well the involuntary furnishing of evidence by the accused by some affirmative act in open court which might aid in establishing his guilt. A well-reasoned case directly in point is that of *Ward v. State*, supra. One of the appellants there having been charged with the crime of manufacturing intoxicating liquors was a witness in his own behalf and, during his cross-examination, the county attorney handed him a coat which had been found near the illegal still and asked him to put it on. Appellant objected and the court overruled the objection and required him to put on the coat in the presence of the jury. After the appellant had done so, the county attorney remarked: "The coat found at the still fits the defendant like the paper on the wall." It was held that the action of the trial court in requiring the defendant, when a witness, to put on the coat in the presence of the jury violated his constitutional right not to give incriminating evidence against himself. The Court there drew a distinction between cases where the defendant, himself, was a witness and those where the compulsion complained of was not against him as such. "The difference is this," said the Court, "that when such comparisons and experiments are made outside of court, the evidence thereto falls from the lips of witnesses other than the defendant. The production of such evidence, therefore, and the testimony thereto, is not that of the defendant but of other witnesses; while, on the other hand if the defendant is required against his objection in open court, in the presence of the jury, to make such experiments and comparisons, no extraneous evidence is required, and the constitutional prohibition is thereby

violated. Certainly it is against the spirit of this prohibition to compel this defendant in open court and in the presence of the jury to put on a coat which will serve directly to connect him with the commission of the crime."

To the same effect and on the same reasoning is the case of *State v. Griffin*, 129 S. C. 200, 124 S. E. 81, 82, 35 A. L. R. 1227. There the Court held that evidence was not admissible that the accused, when requested by the sheriff to put her foot in a track found at the scene of the crime, did not do so in the right way. The Court held that "the line of cleaverage [in cases of this character] is whether the proposed evidence is the testimony of the defendant, or evidence in itself, unaided by any statement of the defendant." As to compelling the defendant to put her foot in the track and her conduct in so doing, the Court reasoned that "if the conformity had been perfect, that fact would have appeared from the enforced conduct of the defendant, clearly testimonial compulsion. If otherwise, as appeared, the inference of guilt from the effort to obliterate the track would have been a legitimate basis of comment; it would have been supplied by the defendant, a clear cut case of testimonial compulsion, as Mr. Wigmore aptly terms it." Cited in support of that conclusion are the cases of *Day v. State*, 63 Ga. 667; *Stokes v. State*, 5 Baxt. Tenn., 619 30 Am. Rep. 72, wherein it was held, in effect, that to require the accused, either in or out of court, to make footprints in order that they might be compared with those in the vicinity of the crime, would be requiring him to give testimony, and therefore an invasion of his constitutional rights. Further supporting authorities are *Cooper v. State*, 86 Ala. 610, 6 So. 110, 4 L. R. A. 766; *Elder v. State*, 143 Ga. 363, 85 S. E. 97.

It has also been held that an accused on trial for a crime cannot be required, against his objection, to try on a shoe to determine whether tracks found at the scene of the crime were his. *People v. Mead*, 50 Mich. 228, 15 N. W. 95, 96. The facts of that case and the Court's

ruling thereon throw light on the issue under consideration in the case at bar. There in a prosecution for burglary, evidence had been given of certain tracks discovered the morning after the fire, and which were supposed to be those of the guilty party. A rubber shoe was produced, and when the defendant took the stand in his own behalf he was asked to try it on, which he did without objection. After he took it off he was asked to measure it. This his counsel objected to, but the objection was overruled and he made the measurement and stated the result. In passing on this the Appellate Court said: "Had there been any objection to the respondent trying on the shoe, the court would have had no authority to require it, and even the simple matter of the measurement the respondent might have declined had he seen fit. But it is to be observed that the only matter objected to was the simple measurement of a shoe, which anyone might have made as well, and which derived no significance for having been done by the respondent himself." See *Wharton's Crim. Ev.*, 11th Ed., Vol. 3, pp. 1979, 1980; also Annotations 75 Am. St. Rep. 331, 94 Am. St. Rep. 344; *Wigmore on Evidence*, 3rd Ed., Vol. 8, 2236; *Shields v. State*, 104 Ala. 35, 16 So. 85, 53 Am. St. Rep. 17.

In passing upon these border-line cases, of which the one at bar is a striking illustration, the test is who furnished or produced the evidence? If the accused, especially if in open court and on the witness stand, is made to do so by performing an act or experimentation which might aid in connecting him with the crime and establishing his guilt, it is inadmissible.

As stated in *Underhill's Crim. Ev.*, 4th Ed., p. 1557: "The constitutional provision against self-incrimination exempts no one from the consequences of his crime, but it does protect him from the necessity of himself producing the evidence, which would not only be in violation of the true charities but would be impolitic as proved by the truths of history and the experience of common life." This same authority further states that

the rule that a defendant shall not be compelled to testify against himself is not a mere formal or technical rule, to be applied at the discretion of the court, but is a mandatory, constitutional provision. *Underhill,* supra, p. 1557; *Gillespie v. State,* 5 Okl. Cr. 546, 115 P. 620, 35 L. R. A., N. S., 1171.

While this constitutional guaranty against compulsory self-incrimination is a time-honored one and jealously guarded by the courts against violation, it is also one which, like all other privileges, may be waived. One way of doing this is for the accused to voluntarily take the witness stand in his own behalf. If he does so, he waives the privilege, not only as to any matter about which he has given testimony in chief, but also concerning any matter pertinent to the issue on trial, regardless of the extent of the direct examination; nor can he then refuse to testify to any fact which would be competent evidence in the case if proved by any other witness. *Guy v. State,* 90 Md. 29, 33, 34, 44 A. 997; *Commonwealth v. Nichols,* 114 Mass. 285, 287, 19 Am. Rep. 346; *Wigmore on Evidence,* 3rd Ed., Vol. 8, p. 444. The one limitation is that he, himself, may not be compelled to furnish or produce evidence which would tend to connect him with the crime.

In the case at bar it was unnecessary for the State to have called upon the defendant to try on the hat in question to bolster up its evidence that he, as the alleged owner of it, was the perpetrator of the crime. The State had already produced evidence that he was the owner, but, instead of relying upon this, the prosecution went a step too far in seeking to make the defendant supply a connecting link in the chain of circumstantial evidence against him.

It is to be borne in mind that the particular purpose in seeking to have the accused try on the hat was not to aid in identifying him by showing how he looked with it on or off, as in the case of *People v. Pecho,* supra, but was for the sole purpose of attempting to prove his ownership of this incriminating article. If

the conformity or fit of the hat had been perfect, or convincingly close to perfection, that fact would have appeared from the enforced action of the accused. If the result of the experiment had been otherwise, as claimed by him, the very fact that he objected to making it would have been prejudicial. In either event, it amounted to a clear case of testimonial compulsion. See *State v. Griffin,* supra. As pointed out in *Underhill's Crim. Ev.,* supra, p. 1557: "The guide in the interpretation of the constitutional provision that the accused shall not be compelled to furnish evidence against himself is not the probability of the evidence but it is the capability of abuse." *Emery's Case,* 107 Mass. 172, 9 Am. Rep. 22.

The facts of this case bring it close to the borderline in applying the doctrine against compulsory self-incrimination, but we adopt the view that the case belongs on that side of the line where judicial protection is afforded an accused from being compelled to perform an evidence-producing act, such as the one in question, and where waiver of his immunity will not be imputed because of his action in voluntarily taking the witness stand in his own behalf. Such an interpretation, we think, conforms to the true spirit of this ancient principle of law and gives to it the best effect in dealing with the human, personal rights which it was designed to safeguard. Holding this view it follows that the ruling of the trial court on appellant's exception to this portion of the evidence must be reversed and a new trial awarded.

*Judgment reversed, and new trial awarded.*