# STATE OF MARYLAND *v.* WARREN TOELLE

[No. 583, September Term, 1969.]

*Decided October 7, 1970.*

The cause was argued before MURPHY, C.J., and ORTH and THOMPSON, JJ.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John J. Garrity, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Kiel, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Robert V. Lazzaro* for appellee.

ORTH, J., delivered the opinion of the Court.

The question on this appeal is whether Warren Toelle is exempt from prosecution, trial and punishment under the provisions of Md. Code, Art. 27, §§ 39, 262 and 371 as to those offenses for which he came to trial in the Criminal Court of Baltimore on 17 December 1969. The lower court found that he was exempt and, on his motion, dismissed, as to him, the five indictments called for trial. We find that he was not exempt, reverse the order dismissing the indictments, and remand the case for further proceedings.

The crux of the question is whether Toelle "testified" within the meaning of §§ 39, 262 and 371 of Art. 27 by giving an exemplar of his handwriting to the Grand Jury which presented and indicted him. The statutes relate to the laws proscribing lotteries and gaming—§ 39 to conspiring to commit those offenses,[1] § 262 to gaming or betting, and § 371 to lotteries. Each statute has the same objective: to render any person competent and compellable to testify concerning the offenses covered by it against any person who may have committed the offenses. Each statute overcomes constitutional objections by providing

---

1. And also to the offenses set forth in § 23, subtitle "Bribery; Obstructing Justice."

in effect that such witness shall be exempt from prosecution, trial and punishment for any and all such crimes and offenses of which such person so testifying may have been guilty or a participant and about which he was compelled to testify.[2] It is established that the statutes apply to testimony before a grand jury. See *Brown v. State*, 233 Md. 288.

It was not disputed below and is not disputed on appeal that Toelle was compelled to give the exemplar to the Grand Jury. Below, the Assistant State's Attorney said, "I'll disavow that it was voluntary because it was, in fact, compelled." On appeal the State phrases its questions presented on the premise that Toelle was compelled. And the record shows clearly that he was. On 1 August 1969 he appeared before the Grand Jury in response to a summons "to provide a handwriting exemplar." A transcript of the proceedings before the Jury was admitted in evidence on the motion to dismiss. It shows that Toelle appeared before the Jury and declined to give an exemplar of his handwriting. It appears from the record that he was then taken before a judge of the Criminal Court of Baltimore and ordered to give the exemplar under penalty of contempt. He was then recalled before the Jury and gave the exemplar it demanded.

The five indictments which were called to trial and subsequently dismissed charged offenses involving violations of the lottery and gaming laws. In four of them, filed 7 May 1969 and on which Toelle had been presented 28 April, he was jointly indicted with Carolyn Virginia Williams, alias Carolyn Jones. Indictment 2858 alleged violations of the lottery laws on 14 April 1969. Indictments 2859, 2860 and 2861 alleged violations of the gaming laws on 8 January 1969, 12 December 1968, and 14 April 1969 respectively. The fifth indictment, No. 3853, was filed 29

---

2. The constitutionality of the statutes is not here questioned. Such a statute is valid if its effect is to grant protection as broad as that afforded by the privilege it displaces. See *State v. Panagoulis*, 3 Md. App. 330, 337, affirmed on certiorari, 253 Md. 699.

August 1969 and Toelle had been presented on the charges therein on 5 June 1969. It charged that Toelle, eighteen other named persons, and persons whose names were unknown, had conspired to violate the lottery and gaming laws on 10 February 1969 and then continually to 2 June 1969.[3] In ruling on the motion to dismiss the lower court found that the handwriting exemplar concerned the offenses for which Toelle and the other defendants had been presented or indicted. We agree. The lower court observed, "There is a great deal of handwritten notations in evidence, hundreds and hundreds of exhibits, some of which may or may not be in the handwriting of Mr. Toelle."[4] There is another consideration leading us to the conclusion that the handwriting exemplar was sought in connection with the charges pending against Toelle. In the record before us there is also a petition filed by the State on 1 October 1969, designated as pertaining to indictment 3853, praying for a court order requiring Toelle to provide a handwriting exemplar. It averred that on "14 April 1969, simultaneous raids were conducted by members of the Baltimore City Police Department, Maryland State Police and the State's Attorney's Office, under authority of search and seizure warrants for seven named persons, their homes, and their motor vehicles, including the person, home, and motor vehicle of the above named defendant [Toelle]"; that as a result of the raid "a large amount of lottery slips, tally sheets, pay-off slips, hit

3. Indictment 2857 charging Toelle and others with conspiring to violate the lottery and gaming laws had been filed on 7 May 1969 but it was not called for trial. Although it is not included in the record before us, it seems that it alleged the period of the conspiracy to be from 10 February to 14 April 1969. According to remarks made by the Assistant State's Attorney at the hearing on the motion to dismiss, indictment 3853 was returned because the names of certain conspirators, not known when indictment 2857 was returned, became known "by virtue of raids that were conducted on June 2nd * * *." The Assistant State's Attorney indicated that the State had planned to enter a nolle prosequi as to indictment 2857 because indictment 3853 "superseded" it.

4. Toelle filed his motion to dismiss prior to trial. The court reserved its ruling pending trial on the merits. At the close of all the evidence it granted the motion. Some evidence was received and the matter argued at hearing before trial and other evidence was proffered and further argument had after the evidence on the merits had concluded.

sheets and related wagering paraphernalia was recovered" that Toelle was indicted on 29 August 1969 for conspiracy to violate the lottery laws; and that the "State of Maryland is desirous of establishing the author of many of the seized wagering documents by means of handwriting comparisons." The court refused to sign a peremptory order for Toelle to provide a handwriting exemplar but on 26 November signed an order for him to show cause at a hearing to be held on 5 December why he should not be so directed. Why the State filed this petitiion when Toelle had already given an exemplar of his handwriting is not made clear, but on 10 December, upon petition of the State averring that before the hearing of 5 December commenced, "the State in its overall strategy of the prosecution of the above indictment [3853], elected to withdraw said Petition," the court by its order permitted the State to withdraw it. But while we have no difficulty in determining that Toelle was compelled to give the exemplar of his handwriting and that the exemplar concerned the crimes for which he sought exemption, the question is was Toelle "testifying" within the meaning of the statutes by the mere act of giving the exemplar.[5]

The statutes remove the privilege against self-incrimination. Sections 262 and 371 each provide that no person shall refuse to testify "because his testimony would implicate himself." While section 39 provides merely that no person shall refuse to testify, the Court of Appeals held in *State v. Panagoulis,* 253 Md. 699, 707 that the statute denied a witness the privilege against self-incrimination. We believe that the privilege against self-incrimination is the only constitutional privilege or right that the statutes displace. The immunity granted is in place of the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence. See *Malloy v. Hogan,*

---

5. The transcript of the proceedings before the Grand Jury shows without question that all Toelle was required to do was to give an exemplar of his handwriting. The only inquiry made of him, both when he originally appeared before the Jury and on his recall, was whether he was willing to give the exemplar.

378 U. S. 1. The statutes compel a person to *testify* and by direct expression or by implication he may not refuse to do so "* * * because his *testimony* would implicate himself * * *." (emphasis suplied.) Since the statutes displace only the privilege against self-incrimination, replacing it with an exemption from prosecution, trial and punishment, the exemption accrues only when the privilege against self-incrimination has been violated by the compulsion. The privilege protects an accused only from being compelled to *testify* against himself, or otherwise to provide the State with evidence of a testimonial or communicative nature. The terms "testimonial" or "communicative" do not apply to evidence of acts non-communicative in nature as to the person asserting the privilege, even though such acts are compelled to obtain the testimony of others. See *Schmerber v. California,* 384 U. S. 757, 761 and note 5. Compelling Toelle to give the exemplar did not violate his constitutional privilege against self-incrimination. The Supreme Court said in *Gilbert v. California,* 388 U. S. 263, 266-267 :

> "The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of 'real or physical evidence' * * *' [citing Schmerber, supra, at 763-764] One's voice and handwriting are, or course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. *United States v. Wade,* [388 U. S. 218] at 222-223, 87 S. Ct. at 1929-1930."

Thus the privilege "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber v. California, supra,* at 764.

We have no difficulty in determining that the exemplar given by Toelle was not testimonial or communicative matter. Although elaborate, consisting of a form comprising two pages completed by Toelle, it was simply physical evidence which could be used to establish by comparison whether a given writing had been scribed by him. Its content was not material. Since the exemplar was not testimonial or communicative matter, the obtaining of it by compulsion did not violate Toelle's privilege against self-incrimination. Since his privilege against self-incrimination was not violated, he was not compelled to *testify* within the meaning of Code, Art. 27, §§ 39, 262 and 371. Since he was not compelled to testify within the meaning of those statutes, he was not entitled to the exemption from prosecution, trial and punishment those statutes provide. Since he was not entitled to the exemption, the lower court erred in granting the motion to dismiss the indictments.[6]

Toelle places heavy reliance on *Allen v. State,* 183 Md. 603 where the Court reversed the judgment because the defendant had been compelled to try on a hat during his trial. But our holding is not at odds with the rationale of *Allen,* for in that case the Court found that the trying on

---

6. We do not have before us the question whether the exemplar was obtained in violation of the 4th Amendment proscription against unreasonable searches and seizures. See *Davis v. Mississippi,* 394 U. S. 721. Compare *Schmerber v. California, supra,* IV "The Search and Seizure Claim", pp. 766-772. If it was, however, the sanction would be to exclude it from evidence at the trial on the merits, not to dismiss the indictments.

of the hat was "a clear case of testimonial compulsion." At 613. This was so because "the particular purpose in seeking to have the accused try on the hat was not to aid in identifying him by showing how he looked with it on or off * * *, but was for the sole purpose of attempting to prove his ownership of this incriminating article. If the conformity or fit of the hat had been perfect, or convincingly close to perfection, that fact would have appeared from the enforced action of the accused. If the result of the experiment had been otherwise, as claimed by him, the very fact that he objected to making it would have been prejudicial." At 612-613. In the instant case the compulsion was not as to testimonial or communicative matter as it was in *Allen* and *Allen* is not apposite.

> *Order dismissing indictments 2858, 2859, 2860, 2861 and 3853 reversed; case remanded for further proceedings; costs to be paid by appellee.*