999 A.2d 1029

**Thomas W. MARSHALL**

v.

**STATE of Maryland.**

**No. 9, Sept. Term, 2008.**

Court of Appeals of Maryland.

July 27, 2010.

Katherine P. Rasin, Asst. Public Defender (Nancy S. Forster, Public Defender, of Baltimore, MD), on brief, for petitioner.

Carrie J. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, MURPHY, ADKINS, JOHN C. ELDRIDGE, (Retired, Specially Assigned) and IRMA S. RAKER, (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, J., Retired, Specially Assigned.

The question before us in this criminal case concerns the prosecuting attorney's comments, during closing arguments, about the defendant's decision not to testify in his own behalf. More specifically, the issue is whether the prosecuting attorney's comments constituted error under Article 22 of the Maryland Declaration of Rights and Maryland Code (1974, 2006 Repl.Vol.), § 9–107 of the Courts and Judicial Proceedings Article, or, instead, were permissible under the "invited response" doctrine.

## I.

The petitioner, Thomas Marshall, was charged with possession of cocaine, possession of cocaine with intent to distribute, and possession of drug paraphernalia, in violation of Maryland Code (2002, 2009 Supp.), §§ 5–601, 5–602(2), and 5–619 of the Criminal Law Article. A jury in the Circuit Court for Wicomico County found Marshall guilty of possession of cocaine and possession of cocaine with the intent to distribute, but acquitted him of possession of drug paraphernalia. The possession conviction merged into the possession with intent to distribute

conviction, and Marshall was sentenced to ten years' imprisonment for the greater offense.

During the trial, the State presented four witnesses. Two police officers testified about their involvement in the search of a house in Fruitland, in Wicomico County, Maryland, where the defendant was found by the officers. A third witness, an expert in the analysis of controlled dangerous substances, testified that a substance found in the home was cocaine. The State's final witness qualified as an expert on the identification and valuation of controlled dangerous substances, and he testified with respect to the common practices of narcotics users and dealers. The defense did not present any witnesses.

According to the State's evidence, when police officers executed a no-knock warrant to enter and search the house in Fruitland, the defendant was found in one of the rear bedrooms. He was searched and three bags of cocaine, weighing a total of 8.4 grams, were recovered from his shirt pocket. The defendant also had cash totaling $177 in a pocket of his pants. The police conducted a search of the room where the defendant was discovered and found an additional 2.6 grams of cocaine hidden in one shoe and a digital scale hidden in another shoe. On cross-examination, defense counsel questioned the police officers as to why the warrant authorizing entry into the Fruitland house did not list the defendant as the owner of the premises. Attempting to rebut the State's argument that the defendant had significant ties to the Fruitland house, defense counsel introduced a police report, related to a different matter, which indicated that the defendant resided at a separate address. Defense counsel also elicited testimony that the police had been unable to find in the house any of the defendant's personal effects showing that the defendant resided at the Fruitland address.

The expert who testified regarding the common practices of drug users and dealers stated that the cocaine found in the three bags from the petitioner's pocket were commonly known as "eight balls," approximately an eighth of an ounce, with a

value of roughly $130 to $200. The expert noted that the $177 found on the defendant was significant because that amount fell within the expected price range for one bag of cocaine. He also testified that the absence of smoking devices at the Fruitland house indicated that the house was being used to sell cocaine, rather than a place to smoke it. The expert explained as follows:

"[W]ith [the cocaine] bagged up in eight ball denominations ready for resale, based on the fact that there was already money in the individual's pocket that looked like possibly one bag had already been sold, based on the fact that there were no pipes, nothing to indicate the ingestion of any type of drugs, no way to use it, then why have a product on your person if you're not going to use it. But for resale, oh, yes, it's there, you've got the three bags, you've got the money already, you've got the scales to weigh it out right in the same room, you have another bag sitting next to the scales in another shoe, it's all packaged up ready to go for distribution."

In his closing argument, defense counsel contended that the State had failed to meet its burden of proof on the distribution charge. Claiming that the State did not show a significant link between the defendant and the house in which he was found, defense counsel maintained that the State had not established that the defendant was distributing cocaine, rather than simply purchasing it. Counsel also argued that the State had not shown that the digital scale, which was a key piece of evidence to show distribution, belonged to the defendant. During his closing argument, counsel for the defense highlighted some of the factors needed, in his view, to prove the distribution charge, and counsel asserted that the State had failed to establish such factors. Defense counsel stated:

"Ownership or possessory interest in the place where the cocaine was found. It's not his [the defendant's] house.

"Or indications that the Defendant was participating with others in the mutual use, enjoyment or distribution of cocaine. Mr. Marshall went to the cocaine store. Mr. Marshall purchased cocaine.

254

"Now the State says, well, clearly he is a drug dealer because there were no smoking devices, he could have had a pipe or a can or something used to smoke cocaine. Well, again, it's not a very good idea, particularly in light of all the facts and circumstances that have come out here today, to go to the cocaine store with your pipe and smoke it at the cocaine store.

\* \* \*

"Now, it's not his house. Not a target of the warrant. There was not one shred of evidence linking him to that house, other than him standing in aisle four of the cocaine store. There's no mail, there's nobody testifying that he stays there, he lives there, that he's ever been there before. He's at the cocaine store. He's purchasing cocaine.

"There are no other factors that the State can rely upon, to say he's doing anything other than going to Sam's Club, the cocaine store, and buying that big package of toothpaste where you get six tubes in one, because instead of paying $1.99 for a tube of toothpaste, you get them for $0.68. Because the testimony was from the State's expert that cocaine addicts will use cocaine as much as they can until it's gone."

The defendant's attorney on one occasion referred to the defendant Marshall as a "cocaine addict" and stated that the defendant was in the Fruitland house to "purchase[ ] cocaine." The prosecuting attorney did not object to this characterization but stated in his rebuttal closing argument that

"Mr. Marshall was not going to the cocaine store. Mr. Marshall works at the cocaine store. I'm not asking you, and don't think I did ask you, to speculate on anything when I first approached you. However, I think [defense counsel] is asking you to speculate on several things. While the State might not have introduced evidence definitively linking Mr. Marshall to the home, there is no evidence that definitively links or unlinks him to the home."

Defense counsel objected to the above portion of the State's closing arguments and, after both counsel approached the bench, explained to the judge as follows:

"DEFENSE COUNSEL: He's shifting the burden, Your Honor. I have no requirement to show that he [the defendant] doesn't live there. The State has the requirement to show the link.

"PROSECUTOR: I'm just indicating . . . there are neutral facts. He kept saying those shoes aren't his, how do we know the shoes aren't his, they could be his. There's no evidence that says it's not his. There's no evidence that says it is and there's no evidence [that] says they aren't.

"[Defense counsel] is testifying or making his own conclusions. I'm simply indicating it could go either way. I'm not burden shifting.

"THE COURT: You know where the line is and you know not to cross it.

"PROSECUTOR: Yes, sir."

The prosecuting attorney continued to attack the defendant's position by arguing that defense counsel was testifying on behalf of the defendant, pointing out that counsel

"was testifying and drawing his own conclusions that Mr. Marshall was buying drugs. And I submit to you that there is not a piece of evidence that indicates that Mr. Marshall was there purchasing drugs from someone.

The prosecuting attorney continued (emphasis supplied):

"[Defense counsel] himself said that, again testifying for Mr. Marshall, he said he's a cocaine addict. Now, *Mr. Marshall did not take the stand* so I ask you to take that with a great deal of caution when [defense counsel] tries to indicate a health problem for Mr. Marshall because there's no evidence of that whatsoever.

\*　　\*　　\*

"What [defense counsel] is trying to do, he is trying to create doubt in your mind. He's trying to disguise the facts, make you ignore the facts and shroud what's right

before you. The State has presented ample evidence of Mr. Marshall's guilt as to felony possession and possession. *There is no doubt in my mind to that* ...

"A very fair way to explain, I believe, reasonable doubt is if you imagine you're doing a jigsaw puzzle. And it could be a scenic panoramic mountain view, it could be a little boy fishing. But regardless at some point as you're putting together your jigsaw puzzle, without ever having seen the picture, you will know what the picture is before all the pieces are in place. You will know it's a mountain, you will know it's a little boy fishing even though the fish isn't there or his eye is missing or his hat is missing, you'll know what the picture is even though you don't have all the pieces.

"There are several pieces we don't have. *We don't have Mr. Marshall's thoughts* but we do have so many other pieces and when you put those pieces together, they spell out guilty."

Following the prosecuting attorney's rebuttal closing argument, defense counsel moved for a mistrial, stating that "[t]wice during the State's closing, [the prosecutor] pointed to the fact my client didn't testify, which I think is absolutely off base." Defense counsel also pointed out that the prosecuting attorney had

"asserted to the jury that there's no doubt in his mind that there's sufficient [evidence], the prosecutor can't vouch for the witnesses, they can't vouch for the verdict."

The trial judge denied the defendant's motion and called the prosecutor's comments "simply rhetorical flourish," and not a personal endorsement of a guilty verdict. Regarding the prosecutor's comments on the defendant's decision not to testify, the judge stated:

"I didn't believe [the prosecutor] was pointedly making reference to the fact that your client [the defendant] didn't testify. I didn't hear it myself but apparently ... you [defense counsel] said your client was a drug addict. That wasn't in the evidence."

Defense counsel countered, stating that his comments were a "[r]easonable inference from the facts," but the trial judge was not persuaded and noted that the response of the prosecutor

"was the same thing; he just simply said there was no evidence showing that your client was a drug addict and we can't get inside the defendant's mind, which is . . . a truism. So your motion for mistrial is denied."

The Court of Special Appeals, affirming the judgment in an unreported opinion, held as follows:

"We hold that the prosecutor's comments were a satisfactorily tailored 'invited response.' The prosecutor's comments were in rebuttal of defense counsel's assertion during his closing argument that appellant was a cocaine addict. That fact, as the trial court noted during the bench conference, was not in evidence. Consequently, the prosecutor was entitled to respond in order to bring the jury back to a 'fair and calm consideration of the evidence,' . . . and that is exactly what the prosecutor did."

█ This Court granted the defendant's petition for a writ of certiorari, *Marshall v. State,* 404 Md. 658, 948 A.2d 70 (2008). The State did not file a cross petition for a writ of certiorari. The defendant's petition presented two questions which we have rephrased as follows:

1. Did comments made by the prosecutor regarding the defendant's decision not to testify constitute a permissible "invited response" in the context of the closing arguments, or, to the contrary, did the comments violate the defendant's privilege against self-incrimination?

2. Was defendant deprived of a fair trial because of cumulative, improper remarks made by the prosecutor?

We shall hold that the prosecuting attorney's comments did not constitute a permissible "invited response." Instead, those comments infringed upon the defendant's rights under Article 22 of the Maryland Declaration of Rights and Maryland Code (1974, 2006 Repl.Vol.), § 9–107 of the Courts and Judicial Proceedings Article. Accordingly, we shall reverse

and remand the case for a new trial without addressing the second question.

## II.

The petitioner, in arguing that his "right to remain silent" was violated by the prosecuting attorney's comments to the jury referring to petitioner's decision not to testify, relies on the Self–Incrimination Clause of the Fifth Amendment to the United States Constitution,[1] Article 22 of the Maryland Declaration of Rights,[2] and § 9–107 of the Courts and Judicial Proceedings Article.[3]

---

**1.** The Fifth Amendment provides in pertinent part as follows:
 "No person ... shall be compelled in any criminal case to be a witness against himself. . . . "

**2.** Article 22 states
 **"Article 22. Self incrimination.**
 That no man ought to be compelled to give evidence against himself in a criminal case."

**3.** Section 9–107 of the Courts and Judicial Proceedings Article provides:
 **"§ 9–107. Defendant in criminal trial.**
 A person may not be compelled to testify in violation of his privilege against self-incrimination. The failure of a defendant to testify in a criminal proceeding on this basis does not create any presumption against him."
 The statute originated as Ch. 357 of the Acts of 1876, and it then provided that a person charged in a criminal case
 " 'shall, at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him.' " *Brashears v. The State*, 58 Md. 563, 567 (1882).
 Some of this Court's opinions applying or discussing Maryland self-incrimination principles cite both Article 22 of the Maryland Declaration of Rights and the statute without suggesting any differences between them. The Court in such cases appears to treat the two provisions as guaranteeing the same rights. *See, e.g., Barber v. State*, 191 Md. 555, 566, 62 A.2d 616, 621 (1948) ("The privilege against self-incrimination is protected in this State, both by constitutional provision (Art. 22, Declaration of Rights) and by statute ..."). *See also Smith v. State*, 367 Md. 348, 353–54, 787 A.2d 152, 155 (2001); *Crosby v. State*, 366 Md. 518, 528, 784 A.2d 1102, 1107 (2001), *cert. denied*, 535 U.S. 941, 122 S.Ct. 1325, 152 L.Ed.2d 233 (2002); *Morales v. State*, 325 Md. 330, 335, 600 A.2d 851, 853 (1992); *Woodson v. State*, 325 Md. 251, 265, 600 A.2d 420, 426 (1992); *King v. State*, 190 Md. 361, 374, 58 A.2d

 This Court has on several occasions pointed out that the privilege against self-incrimination protected by Article 22 of the Maryland Declaration of Rights *"generally"* is *"in pari materia"* with the Self–Incrimination Clause of the Fifth Amendment. *See, e.g., Crosby v. State,* 366 Md. 518, 527 n. 8, 784 A.2d 1102, 1107 n. 8 (2001), *cert. denied,* 535 U.S. 941, 122 S.Ct. 1325, 152 L.Ed.2d 233 (2002); *Choi v. State,* 316 Md. 529, 535 n. 3, 560 A.2d 1108, 1111 n. 3 (1989); *Adkins v. State,* 316 Md. 1, 6 n. 5, 557 A.2d 203, 205 n. 5 (1989). Nonetheless, as pointed out by Judge Battaglia for this Court in *Crosby v. State, supra,* 366 Md. at 527 n. 8, 784 A.2d at 1107 n. 8, "we have previously interpreted Maryland's privilege against self-incrimination to be more comprehensive than that of the federal government." *See also Crosby v. State, supra,* 366 Md. at 534, 784 A.2d at 1111 (Harrell, J., concurring, and referring to "the greater protections offered by Art. 22 of the Maryland Declaration of Rights than the Fifth Amendment"); *Hardaway v. State,* 317 Md. 160, 164–169, 562 A.2d 1234, 1236–1238 (1989) (holding, contrary to federal law, that a jury instruction that no adverse inference should be drawn from a defendant's election not to testify should not be given over the defendant's objection); *Choi v. State, supra,* 316 Md. at 535 n. 3, 560 A.2d at 1111 n. 3 (referring to "situations where the privilege under Art. 22 has been viewed differently, and more broadly, than the privilege under the Fifth Amendment"); *Allen v. State,* 183 Md. 603, 39 A.2d 820 (1944); *Chesapeake Club v. State,* 63 Md. 446, 457, 462 (1885).[4]

---

663, 668 (1948). Many other opinions dealing with the privilege, however, rely on Article 22 without citing the statute. *See, e.g., Choi v. State,* 316 Md. 529, 536–537, 560 A.2d 1108, 1111–1112 (1989); *Adkins v. State,* 316 Md. 1, 6–7, 557 A.2d 203, 205–206 (1989); *Ellison v. State,* 310 Md. 244, 258–259, 528 A.2d 1271, 1278 (1987); *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021, 1023–1024 (1979). Interestingly, the initial case in this Court holding that it is error for the prosecuting attorney, in jury argument, to comment on the defendant's failure to testify, relied particularly on the statute. *Smith v. State,* 169 Md. 474, 182 A. 287 (1936).

**4.** There is no inconsistency between this Court's statement that Maryland self-incrimination law is *"generally in pari materia"* with the Fifth

Although the petitioner, as previously mentioned, relies on both the Fifth Amendment and Maryland self-incrimination law (Article 22 of the Declaration of Rights and § 9–107 of the Courts and Judicial Proceedings Article), we shall rest our decision, as we have often done in the past, solely upon the Maryland provisions. As Judge Wilner for the Court emphasized in *Perry v. State,* 357 Md. 37, 86 n. 11, 741 A.2d 1162, 1188 n. 11 (1999), regarding a decision under Article 21 of the Maryland Declaration of Rights, our citation and quotation of federal authority is "for guidance only" and our decision is based entirely on Maryland law. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983). *See also Ohio v. Robinette,* 519 U.S. 33, 36–37, 117 S.Ct. 417, 420, 136 L.Ed.2d 347, 353 (1996); *Arizona v. Evans,* 514 U.S. 1, 6–10, 115 S.Ct. 1185, 1189–1190, 131 L.Ed.2d 34, 41–42 (1995).

---

Amendment and our holdings that, to some extent, Maryland self-incrimination law grants greater protections to the individual than the Fifth Amendment. The Latin phrase *"in pari materia,"* or "in the same matter," simply means "[o]n the same subject" or "relating to the same matter." *Black's Law Dictionary* (8th ed. 2004) at 807. As this Court has pointed out on numerous occasions,

"simply because a Maryland constitutional provision [or statute or common law principle] is *in pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart. Furthermore, cases interpreting and applying a federal constitutional provision are only persuasive authority with respect to the similar Maryland provision." (Emphasis in original).

*Dua v. Comcast Cable,* 370 Md. 604, 621, 805 A.2d 1061, 1071 (2002). *See also, e.g., Parker v. State,* 402 Md. 372, 400, 936 A.2d 862, 878–879 (2007); *Prince George's County v. Ray's,* 398 Md. 632, 641 n. 5, 922 A.2d 495, 499–500 n. 5 (2007); *Green Party v. Board of Elections,* 377 Md. 127, 157–158, 832 A.2d 214, 232 (2003); *Allstate v. Kim,* 376 Md. 276, 293, 829 A.2d 611, 621 (2003); *Frankel v. Board of Regents,* 361 Md. 298, 313, 761 A.2d 324, 332 (2000); *Gahan v. State,* 290 Md. 310, 322, 430 A.2d 49, 55 (1981); *Attorney General v. Waldron,* 289 Md. 683, 714, 426 A.2d 929, 946 (1981).

While there is language in *Ellison v. State, supra,* 310 Md. at 259–260 n. 4, 528 A.2d at 1278–1279 n. 4, that "we perceive no difference between Art. 22 of the Declaration of Rights and the Fifth Amendment's Self–Incrimination Clause," that language was preceded by the words "[w]ith regard to the … holdings set forth in … this case...."

### III.

### A.

■ "This Court has maintained that the right to remain silent 'has always been liberally construed in order to give fullest effect to this immunity.' " *Crosby v. State, supra,* 366 Md. at 527 n. 8, 784 A.2d at 1107, n. 8, quoting *Allen v. State, supra,* 183 Md. at 607, 39 A.2d at 821. *See, e.g., Choi v. State, supra,* 316 Md. at 536, 560 A.2d at 1111 ("This Court has repeatedly emphasized that the privilege against compelled self-incrimination, under ... Art. 22 of the Declaration of Rights, 'must be accorded a liberal construction in favor of the right that it was intended to secure' "); *Adkins v. State, supra,* 316 Md. at 8, 557 A.2d at 206 (same); *Ellison v. State,* 310 Md. 244, 248, 258, 528 A.2d 1271, 1273, 1278 (1987) ("Contrary to the view of the court below, [that testimonial privileges, including the privilege against self-incrimination, are disfavored,] the privilege against self-incrimination 'must be accorded liberal construction in favor of the right it was intended to secure' "); *State v. Comes,* 237 Md. 271, 282, 206 A.2d 124, 130 (1965).

Moreover, our cases have long held that a criminal defendant's rights under Article 22 of the Maryland Declaration of Rights and § 9–107 of the Courts and Judicial Proceedings Article preclude comment by a prosecutor on a defendant's decision not to testify. In fact, as pointed out by Judge Raker for the Court in *Smith v. State,* 367 Md. 348, 353, 787 A.2d 152, 155 (2001),

> "[c]omment upon a defendant's failure to testify in a criminal trial was prohibited in Maryland before the United States Supreme Court, in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), held that the federal constitutional right against compelled self-incrimination prohibits prosecutorial comment on the accused's silence or failure to testify."

*See Woodson v. State,* 325 Md. 251, 265, 600 A.2d 420, 426 (1992) ("Well before *Griffin,* our cases prohibited [the] practice" of "comment on a defendant's failure to testify"); *Veney*

*v. State,* 251 Md. 159, 179, 246 A.2d 608, 620 (1968), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969) ("It is clear that in Maryland comment upon a defendant's failure to testify in a state criminal trial was forbidden long prior to *Griffin v. California* ").

Thus, in *Smith v. State,* 169 Md. 474, 182 A. 287 (1936), this Court held that it was improper for the prosecuting attorney to comment upon a defendant's decision not to testify in his own criminal trial. *Smith* was a prosecution for the crime of bastardy, and the State's Attorney noted during his closing argument that "this defendant has sat here all during the trial and has not denied his fatherhood." This Court held that the prosecutor's comment was improper, saying (169 Md. at 476, 182 A. at 288):

"There can be no question of the impropriety of this re-mark, as it was susceptible of the inference by the jury that they were to consider the silence of the traverser in the face of the accusation of the prosecuting witness as an indication of his guilt."

Even before the 1936 opinion in *Smith v. State, supra,* this Court implied that a prosecuting attorney could not comment upon a defendant's silence when the defendant exercised his right not to testify. In *Brashears v. The State,* 58 Md. 563, 567–569 (1882), and *Guy v. State,* 90 Md. 29, 33–35, 44 A. 997 (1899), the Court decided that, when the defendants took the stand and testified, the prosecuting attorneys *could* comment on the defendants' silence as to particular matters. The Court held that the defendants' decisions to testify waived their rights to have no prosecutorial comments on their silence with regard to particular matters.

More recently, in a prosecution against another non-testify-ing defendant named Smith, for burglary and related offenses involving the theft of, *inter alia,* leather clothing, the prose-cuting attorney stated in closing rebuttal argument to the jury: *"What explanation* has been given to us *by the defen-dant* for having the leather goods? Zero, none." *Smith v. State, supra,* 367 Md. at 352, 787 A.2d at 154, emphasis in

original. This Court, in reversing Smith's convictions and ordering a new trial, held that (367 Md. at 360, 787 A.2d at 159)

"the prosecutor went beyond the permissible comment on the absence of the evidence, and impermissibly commented directly on the defendant's failure to testify."

Another case disapproving of the prosecuting attorney's closing argument to the jury, on the ground that it amounted to comment upon the defendant's failure to testify, is *Woodson v. State, supra,* 325 Md. at 264–267, 600 A.2d at 426–428. In *Woodson,* the prosecuting attorney during closing rebuttal argument said, while pounding on the witness stand and pointing to the defense trial table, "they have sat there for 6 days, not here." 325 Md. at 265, 600 A.2d at 427. The prosecutor also told the jury that the defense had "tried to baffle you with bologna from that trial table and from in front of here today and ... that is not evidence.... We gave you evidence...." *Ibid.* With regard to these comments by the prosecutor, this Court stated (325 Md. at 267, 600 A.2d at 427):

"Notwithstanding the trial court's careful consideration of Woodson's motions for a mistrial and for a new trial, it is plain that the only person at the defense trial table who could have sat in the witness stand was [the defendant] himself, and that the prosecutorial comment therefore invited attention to the fact that [the defendant] did not testify. By pointing out to the jury that the prosecution 'gave you evidence,' and that [the defendant] did not, the jury may well have gleaned from that sharp contrast that it might infer guilt from [the defendant's] silence."

In the instant case, the two statements by the prosecuting attorney were more direct comments upon the defendant's decision not to testify than the prosecuting attorneys' comments in the *Smith* cases and *Woodson.* The prosecutor's statements to the jury that "Mr. Marshall did not take the stand" and "[w]e don't have Mr. Marshall's thoughts" were used to highlight the fact that the defendant did not testify in an effort to rebut the State's evidence. The prosecuting attor-

ney clearly was using the defendant's silence as support for the State's case. These comments impinged on the defendant's rights under Article 22 of the Maryland Declaration of Rights and § 9–107 of the Courts and Judicial Proceedings Article.

## B.

In this case neither the Court of Special Appeals nor the State took the position that the prosecuting attorney's statements did not amount to comments upon the defendant's silence. Instead, the intermediate appellate court decided, and the State in this Court argued, that the challenged statements by the prosecuting attorney were permissible under the "invited response" doctrine, or the "fair response" doctrine as it is sometimes called. The Court of Special Appeals held that the prosecuting attorney's statements, that "Mr. Marshall did not take the stand" and that "[w]e don't have Mr. Marshall's thoughts," were appropriate invited responses to defense counsel's argument that the defendant was a cocaine addict and not a distributor of cocaine.

A closely divided Supreme Court in *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), held, in a federal criminal prosecution, that the prosecuting attorney in argument to the jury could comment on the defendant's decision not to testify because the comment was a "fair response" to defense counsel's "closing argument that the Government had not allowed respondent to explain his side of the story." *Robinson*, 485 U.S. at 26, 108 S.Ct. at 866, 99 L.Ed.2d at 27. The Supreme Court held "that the comment by the prosecutor did not violate respondent's privilege to be free from compulsory self-incrimination guaranteed by the Fifth Amendment to the United States Constitution." (*Ibid.*). Consequently, under *Robinson*, a defendant's *Fifth Amendment* right to be free of prosecutorial comment upon the defendant's decision not to testify can be lost because of

defense *counsel's* closing argument.[5]

This Court has never decided, or even discussed, whether, under Maryland law, the invited response doctrine is applicable to a prosecutor's comments to the jury about the defendant's decision not to testify at his or her criminal trial. The Court has also not addressed the invited response doctrine in the context of Article 22 of the Maryland Declaration of Rights and/or § 9–107 of the Courts and Judicial Proceedings Article.[6] Furthermore, we need not decide or further explore

---

**5.** It should be noted that, under Maryland law, an individual's rights under Article 22 of the Declaration of Rights and § 9–107 of the Courts and Judicial Proceedings Article are personal. *Bhagwat v. State*, 338 Md. 263, 271, 658 A.2d 244, 247 (1995); *Franklin v. State*, 239 Md. 645, 648, 212 A.2d 279, 281 (1965); *Royal v. State*, 236 Md. 443, 447, 204 A.2d 500, 502 (1964). In *Smith v. State*, 394 Md. 184, 213, 905 A.2d 315, 332 (2006), this Court held that, in determining whether a person was entitled to claim the privilege against self-incrimination, the trial judge erred in basing the decision upon the representations of the person's lawyer instead of questioning the person himself.

**6.** We have, however, dealt with the invited response doctrine in other contexts. *See, e.g., Mitchell v. State*, 408 Md. 368, 380–387, 969 A.2d 989, 996–1000 (2009) (involved the prosecutor's comments about defense counsel's right to subpoena witnesses, after defense counsel referred to certain witnesses whom the State failed to call); *Lee v. State*, 405 Md. 148, 161–170, 950 A.2d 125, 132–138 (2008) (concerned a prosecutor's statements about the credibility of witnesses and reference to the "law of the streets"). *See also Spain v. State*, 386 Md. 145, 157 n. 7, 872 A.2d 25, 32 n. 7 (2005).

In *Key–El v. State*, 349 Md. 811, 709 A.2d 1305 (1998), the Court considered whether the defendant's pre-arrest silence, when the defendant's wife accused the defendant of battering her, was admissible in evidence, under the circumstances, as a tacit admission by the defendant. While the Court did address an argument by the defendant that the Fifth Amendment's Self–Incrimination Clause was violated, and in this connection cited *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), this Court specifically noted that the defendant made no separate argument based on Article 22 of the Maryland Declaration of Rights. *Key–El v. State, supra*, 349 Md. at 820–821 n. 2, 709 A.2d at 1309 n. 2.

Shortly after the *Key–El* case, in *Grier v. State*, 351 Md. 241, 260–262, 718 A.2d 211, 221 (1998), we decided, that evidence of a defendant's post-arrest, pre-trial silence was not admissible under the fair response doctrine. The only constitutional provision cited in this part of the *Grier* opinion was the Fifth Amendment. Neither Article 22 of the

these matters today. Assuming, *arguendo*, that the invited response doctrine may be applicable under Maryland law to a prosecutor's comments about the defendant's decision not to testify, the doctrine would not justify the prosecuting attorney's comments in the case at bar.

The invited response doctrine has been considered at length in two recent opinions of this Court, *Mitchell v. State*, 408 Md. 368, 969 A.2d 989 (2009), and *Lee v. State*, 405 Md. 148, 950 A.2d 125 (2008). Judge Battaglia for the Court in the *Lee* case set forth the doctrine and its limitations as follows (405 Md. at 168, 950 A.2d at 137, internal quotation marks omitted).

"The invited response doctrine suggests that where a prosecutorial argument has been made in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each other out, thus obviating the need for a new trial. *Spain*, 386 Md. at 157 n. 7, 872 A.2d at 32 n. 7. The doctrine does not grant a prosecutor unbridled discretion to respond to an inappropriate defense argument with improper conduct, but rather, permits the prosecution to respond to improper conduct in order to equalize the positions of both sides and remedy any unfair prejudice."

Judge Battaglia continued in *Lee* (405 Md. at 169, 950 A.2d at 137):

"[B]ecause the 'invited response doctrine' calls for the prosecutor's invited response to be considered in context with the defense counsel's own impropriety, it is not applicable when defense counsel has made no improper argument."

In *Lee*, we held that defense counsel's argument was not improper and that, therefore, the invited response doctrine was inapplicable.

In *Mitchell v. State, supra*, 408 Md. at 382, 969 A.2d at 997, Judge Greene for the Court, after reviewing general Maryland law concerning permissible closing argument, turned to the

---

Declaration of Rights nor § 9–107 of the Courts and Judicial Proceedings Article were mentioned.

invited response doctrine and reaffirmed the holding in *Lee* "that the 'invited response' doctrine applies only when defense counsel first makes an improper argument." Judge Greene also observed that "[t]his Court has not yet had the opportunity to address an improper argument by defense counsel sufficient to invoke the 'invited response' doctrine." *Mitchell,* 408 Md. at 383, 969 A.2d at 998. The *Mitchell* opinion then held (408 Md. at 383–384, 969 A.2d at 998–999):

"Because it is within the scope of permissible closing argument for counsel to draw inferences from the evidence admitted at trial, which includes the ability to comment on an absence of such evidence, defense counsel's closing argument was not improper. *See Eley v. State,* 288 Md. 548, 553, 419 A.2d 384, 386–387 (1980) (holding that defense counsel may call attention to the State's failure to produce evidence); *Wise v. State,* 132 Md.App. 127, 146, 751 A.2d 24, 33 (2000)(recognizing the "right of a defendant to comment upon the failure of the State to produce evidence"), *cert. denied,* 360 Md. 276, 757 A.2d 811 (2000); *Eastman v. State,* 47 Md.App. 162, 167, 422 A.2d 41, 43 (1980)(noting that "it is not unreasonable to permit the defense to comment upon the State's shortcomings in producing prosecutorial evidence")."

In the case at bar, the challenged argument by defense counsel was not improper, or, at the very least, not sufficiently improper to justify the prosecutor's comments upon the defendant's decision not to testify. The defendant Marshall was charged both with possession of cocaine with intent to distribute it and, separately, with simple possession of cocaine. Moreover, the State's evidence at trial showed that Marshall had cocaine on his person. Except for his presence in the house which was searched, the evidence did not show that Marshall had a connection to the house. The gist of defense counsel's argument was that Marshall was not a distributor but a user of cocaine and was in the house to purchase cocaine. Counsel was, in effect, arguing that Marshall was guilty of the lesser offense charged but not guilty of the greater offense.

While the State seizes upon the word "addict" and argues that there was no evidence that Marshall was a cocaine addict, the word has no significance with respect to guilt or innocence of the charges in this case. Defense counsel, only once referring to Marshall as an addict, was simply arguing that Marshall was a user of cocaine instead of being a distributor. This was a legitimate inference from the State's evidence. The offense under § 5–601(a) of the Criminal Law Article is to "possess" the controlled dangerous substance. One who is in possession of cocaine, but is not a distributor of cocaine, is likely a user. Defense counsel's choice at the time of the word "addict" in place of "user" or "purchaser" is, in the context of this case, insignificant.

In sum, there was no impropriety in defense counsel's closing argument sufficient to warrant the prosecutor's comments on the defendant's decision not to testify.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY.*

Judge ADKINS concurs in the judgment only.