718 A.2d 1125

**Nathaniel Steven BRUCE**

v.

**STATE of Maryland.**

**No. 60, Sept. Term, 1997.**

Court of Appeals of Maryland.

Oct. 7, 1998.

Denise Oakes Shaffer, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

KARWACKI, Judge (retired), Specially Assigned.

We granted certiorari in this criminal case to determine whether the trial court abused its discretion in refusing the accused's request that the members of the jury be interrogated to ascertain whether any of them had been prejudiced.

The request was prompted by an electronic bulletin board erected inside the entrance of the courthouse which showed the names of the cases being tried and the courtrooms in which the trials were to be held. The bulletin board on the day the accused's trial was to be held disclosed that he had two other criminal cases pending that day.

## I.

Nathaniel Steven Bruce, the petitioner, was convicted by a jury in the Circuit Court for Prince George's County of robbery with a deadly weapon, robbery, and the use of a handgun in the commission of that robbery. He was sentenced to imprisonment for 20 years for the robbery with a deadly weapon and to a consecutive 20 year sentence for the handgun violation. These judgments were affirmed by the Court of Special Appeals in an unreported opinion. We issued a writ of certiorari on the petition of the accused.

The evidence produced before the jury was sufficient to establish the facts which were summarized by the Court of Special Appeals as follows:

"On June 19, 1995, Shawn Conner and Albert Margolius were working at Silver Hill Liquors in Prince George's County. Two men entered the store. Conner testified that one of the men asked for the correct time. When Conner looked toward the man, he saw a handgun pointed toward him, and he was instructed to open the cash registers and get down on the floor.

The man holding the gun came behind the counter and Conner observed him for approximately thirty seconds. He gave the following description of the gunman to the police: a dark skinned, black male, 5 feet 7 inches tall, with bad teeth, three to four days' growth of facial hair, wearing a blue and yellow shirt and shorts, white socks, black shoes and a hat. From a group of police photographs, Conner identified appellant as the man with the gun. He repeated the identification at trial.

Albert Margolius testified that appellant pulled a "Tec–9"[1] from inside his sweater, pointed it at Margolius and said, "Okay, let's go, you know what to do." The second robber ordered both employees to get down on the floor, and appellant went behind the counter and took between $12,000 and $14,000 from the safe and the registers. Margolius said his observation of appellant lasted about four seconds. He identified appellant as the man with the gun after reviewing a series of thirty-two photographs, and repeated the identification at trial.

1. A Tec–9 is a semi-automatic pistol with an extended clip capable of firing 10 or more rounds."

This case was called for trial on April 16, 1996. After the members of the panel of prospective jurors were examined on their voir dire and after the parties exercised their challenges for cause and peremptory challenges, a jury of twelve with two alternate jurors was selected. Thereafter, the trial judge appointed a foreperson of the jury and gave the jury a brief introductory explanation of what would occur at trial. It was then decided to recess for the day and to begin the trial on the following morning. The trial court advised the jury *inter alia* that:

"Because of the fact that I have a jury out in another matter, I want you to gather in the jury lounge. You all are jurors in the case of State of Maryland versus Nathaniel Bruce, and I am Judge Shepard, and this is Courtroom 159.

So if you gather there together in the jury lounge, the bailiff will come and get you some time around 9:30 tomorrow morning to bring you into the courtroom. Enjoy your evening. You all are excused."

The jury which was then deliberating in the jury room of the courtroom where the instant case was to be tried was empaneled in one of the two other cases pending against the petitioner. In light of that, the following colloquy took place between defense counsel and the trial judge:

"[DEFENSE COUNSEL] We need to do something prophylactically in order to make sure that this Bruce jury doesn't get confused with that one. They need to be

instructed, to avoid contamination, to go to that jury room tomorrow morning rather than to go to the jury lounge, do not go to the jury lounge.

THE COURT: You are suggesting that the jury that's in there deliberating now should be asked to suspend their deliberations until 9:00 tomorrow morning there?

MR. McCARTHY: That was my thought, Your Honor. But I would ask that we wait perhaps—what time do they have to leave to catch the early trip?

THE DEPUTY SHERIFF: Now, five minutes.

MR. McCARTHY: We would ask that they suspend deliberations until tomorrow morning, Your Honor. Before being released, that they be instructed to come back to that room rather than the jury lounge tomorrow morning so that there isn't a problem of the new jury and the old jury running into each other because of the name confusion.

THE COURT: All right, let's do that, then.

(Whereupon, at 3:55 p.m. the trial adjourned for the day.)"

When the case resumed on April 17, 1996, defense counsel and the trial judge engaged in the following colloquy:

"Your Honor, there is another problem, I am not entirely sure how to address it. Back in the days of printed dockets when the documents were simply put up, when a person had multiple charges, they did not put case numbers next to it, they just put his name and the courtroom, and that was a standard order done by the Administrative Judge at that time to avoid the problem we have here.

Published this morning is the fact that there are three charges, three cases pending against this man.

THE COURT: Published where?

MR. McCARTHY: On the TV thing on the first floor and ground floor. It's published to any juror looking for any information.

THE COURT: Do you have any knowledge that any juror has been looking for any information?

MR. McCARTHY: Your Honor, it is put where they can't help it when they pass it.

THE COURT: Well, I can tell you this, that the jury that is out in the case that was concluded yesterday except for, of course, deliberation, was given very express instructions as to where to be today and what time. They would have no occasion or need to consult with anything on the board.

The jury that was chosen yesterday afternoon was told by me that they should report to the jury lounge and they will await instructions from the bailiff as to where to go for the commencement of this trial. They would have had no need to look at anything on the electronic board.

The electronic bulletin is primarily there for the convenience of the litigants, not jurors. Jurors know that they are to report to the jury lounge.

Unless you have some information that a juror or jurors—

MR. McCARTHY: Without directly questioning the jury, I don't know whether or not they have obtain—I think the possibility, even though it's not addressed after this case in terms of a mistrial, which I think would be appropriate, I think the Court needs to talk to the assignment office and correct what I think is a real problem which had been corrected before, before they put up these electronic bulletin boards.

The COURT: Well, your motion for a mistrial is denied".

## II.

Bruce asserts that the trial court committed reversible error when it refused, prior to ruling on the motion for mistrial, to interrogate the jurors who had been empaneled in the instant case as to whether they had observed the electronic bulletin board when entering the courthouse, and if so, whether they had noticed that he had two other criminal cases pending in addition to the case which they had been sworn to decide. He claims that the information imparted on the bulletin board amounted to other crimes evidence against him,

the admission of which was potentially highly prejudicial. *Rainville v. State*, 328 Md. 398, 407, 614 A.2d 949, 953 (1992); *Ross v. State*, 276 Md. 664, 669–70, 350 A.2d 680, 684 (1976).

■ While it is true that this Court has recognized the potential prejudicial effect of other crimes evidence, it is equally clear that the conduct of a criminal trial is committed to the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. *State v. Cook*, 338 Md. 598, 615, 659 A.2d 1313, 1322 (1995); *Evans v. State*, 333 Md. 660, 673, 637 A.2d 117, 123 (1994); *State v. Hawkins*, 326 Md. 270, 277, 604 A.2d 489, 493, (1992); *Henry v. State*, 324 Md. 204, 220 596 A.2d 1024, 1032 (1991); *Hunt v. State*, 321 Md. 387, 405, 583 A.2d 218, 227 (1990) *cert. denied*, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *Owens–Corning v. Baltimore City*, 108 Md.App. 1, 28, 670 A.2d 986, 1000, *cert. denied*, 342 Md. 472, 677 A.2d 565 (1996). The reason for this deference was explained in *State v. Hawkins*, 326 Md. at 278, 604 A.2d at 493:

"The fundamental rationale in leaving the matter of prejudice *vel non* to the sound discretion of the trial judge is that the judge is in the best position to evaluate it. The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able to ascertain the demeanor of the witnesses and to note the reaction of the jurors and counsel to inadmissible matters. That is to say, the judge has a finger on the pulse of the trial."

■ The trial judge in the instant case exercised the discretion vested in him to deal with the "problem" presented by the electronic bulletin board. He was aware of the possible intermingling of the members of the jury who were deliberating in one of the pending cases involving Bruce (Bruce I) with the members of the jury who had just been selected to hear another of the pending cases in which Bruce was charged (Bruce II). Consequently, before dismissing the jurors in Bruce I for the evening of April 16th, he instructed them to

report the next morning to resume their deliberations in the jury room of the courtroom where he was presiding. At the same time he advised the jurors just selected to hear Bruce II to report directly to the jury lounge of the courthouse. These instructions made it unnecessary for the jurors in either case to consult the electronic bulletin board in order to determine where they should report for duty on April 17th. Likewise, when a request was made by Bruce in Bruce II on the morning of April 17th to *voir dire* the members of the jury in that case to see if any of them had been exposed to the information contained on the electronic bulletin board, the court properly noted that no suggestion had been made that any of the jurors had been so exposed. Under these circumstances we hold that the trial court did not abuse its discretion in refusing to interrogate the jurors as to whether any had seen the electronic bulletin board.

Courts in our sister states have reached similar conclusions. For example, in *State v. Strauss,* 779 S.W.2d 591 (Mo.App. 1989), the trial court refused to question jurors in a pending case as to whether they had seen newspaper articles or heard a radio broadcast about the case. It was held that the trial court did not abuse its discretion in doing so since the defendant was unable to cite any instance of a juror's exposure to any publicity about the case. Also, in *Salas v. State,* 544 So.2d 1040, 1042 (Fla.Dist.App.1989), *rev'd on other grounds,* 589 So.2d 343 (Fla.Dist.App.1991), it was held that the trial court acted within its discretion in refusing to *voir dire* the jury with regard to a newspaper article prejudicial to the defendant where there was no evidence that any of the jurors had seen the article.

The Maryland appellate decisions relied upon by Bruce to support his claim that the trial judge should have interrogated the jurors in the instant case as to their exposure to the electronic bulletin board are inapposite. In *Wilson v. Morris,* 317 Md. 284, 302, 563 A.2d 392, 401 (1989), during the trial of a personal injury suit a juror was overheard to say "these cases are costing too much" and "need to be stopped." Since that remark unambiguously demonstrated a bias against claims for

personal injuries, we held that the trial judge erred in refusing to conduct a *voir dire* examination of the juror before ruling on the plaintiff's motion for a mistrial. Also, in *Stokes v. State,* 72 Md.App. 673, 675, 532 A.2d 189, 192 (1987) the Court of Special Appeals held that the trial court should have inquired of a juror who was seen sleeping during the trial and periodically smiling at the defendant to determine whether his actions demonstrated an inability to serve or bias in favor of the defendant.

Unlike either of these cases there was no evidence here that any of the jurors had been exposed to the allegedly prejudicial information on the electronic bulletin board. Furthermore, because of the pains which the trial judge took in explaining where they should report for jury duty on April 17th, the jurors would not have had any reason to consult that board.

The cases from other jurisdictions cited by Bruce are also distinguishable on their facts: *Malott v. State,* 485 N.E.2d 879, 881–82 (Ind.1985) (where the prospective jurors saw the defendant in shackles, the trial court properly *voir dired* the jurors to determine whether they had been prejudiced by those sightings); *State v. Perry,* 316 N.C. 87, 340 S.E.2d 450, 463 (1986) (Same); *Sher v. Stoughton,* 666 F.2d 791, 793 (2nd Cir.1981) (where six of the jurors had received anonymous telephone calls and they had discussed them among themselves, the trial court properly interrogated the jurors to ascertain whether they had been compromised by the communications; *State v. Reevey,* 159 N.J.Super. 130, 387 A.2d 381, 383 (N.J.Super.App.) *certification denied,* 79 N.J. 471, 401 A.2d 228 (1978)) (trial court should have conducted examination of juror who was observed sleeping during the trial for the same reasons expressed by the Court of Special Appeals in *Stokes v. State, supra* ); *U.S. v. Console,* 13 F.3d 641, 649 (3rd. Cir.1993), *cert. denied,* 511 U.S. 1076, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994) (where one of the jurors discussed an issue in the case with her sister-in-law who was an attorney and communicated the information she received to four other jurors, the trial court properly individually interviewed each juror to determine whether any of them had been prejudiced

by the communication—such *voir dire* was indicated "[w]here there is a significant possibility that a juror or potential juror has been exposed to prejudicial extra-record information." *Id.* at 667, *quoting Government of the Virgin Islands v. Dowling,* 814 F.2d 134, 137–38 (3rd Cir.1987), *aff'd* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d. 708 (1990)).

The trial judge in the case *sub judice* found that there was no reasonable likelihood that any of the jurors had seen the potentially prejudicial information contained upon the electronic bulletin board, and that finding was supported by the evidence; consequently, he did not abuse his discretion in refusing to *voir dire* the jurors to investigate Bruce's speculation that the jury had been tainted by such exposure.

**JUDGMENT AFFIRMED, WITH COSTS.**