75 A.3d 1003

**Ralph Sabert CHOATE**

v.

**STATE of Maryland.**

No. 0922, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 9, 2013.

Michael T. Torres (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Benjamin A. Harris (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, BERGER and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MOYLAN, J.

Ralph Sabert Choate, the appellant, was convicted by a jury in the Circuit Court for Montgomery County of one count of first degree rape and two counts of first degree sexual offense. The court imposed three consecutive life sentences. The appellant has raised four issues for our review, which we have reworded:

I. Did the court err in instructing the jury on an aggravating factor with respect to both first degree rape and first degree sexual offense?

II. Did the court abuse its discretion in denying the appellant's two motions for mistrial?

III. Did the court abuse its discretion in postponing trial beyond the *Hicks*[1] date and did the court err in denying the appellant's motion to dismiss for this reason?

IV. Did the court err in permitting a witness to testify about the victim's prompt report of sexual assault?

We shall hold that issue I is not preserved for our review and the remaining issues are not meritorious. Accordingly, we shall affirm.

### Facts

The evidence adduced at trial revealed the following facts. In the fall of 2010, the victim hired the appellant to work as a handyman and to do odd jobs in her Bethesda home. He had been recommended by another contractor. The victim was satisfied with the appellant's work and she recommended his services to her neighbors. In December 2010, the appellant filled in holes in the victim's laundry room wall and promised to return later to sand and paint the wall. The victim and the appellant finally agreed that he would return to finish the job on February 5, 2011 at 8:00 a.m.

On February 5, the appellant called the victim at 6:50 a.m. to say that he was "almost at [her] neighborhood." It was unusual for the appellant to arrive that early. The victim got dressed and the appellant arrived. The victim thought the appellant was acting strangely. The appellant went to his vehicle to get supplies and the victim went to the kitchen to make tea. While the victim was in the kitchen, the appellant came up behind her and said, "let's you and me, let's get it on." This was the first time the appellant had made a sexual

---

1. *See State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979).

advance toward her. The victim told the appellant that his comment was not funny, and that he should leave. The appellant repeated that he wanted to "get it on." The victim again told the appellant to leave, and ran out of the kitchen. When the victim reached the entrance area of her home, the appellant grabbed her and pulled out a screwdriver that "had yellow on it." The victim pushed herself away, but the appellant tackled her, held her down, locked the front door, and told her to be quiet. The victim felt scared because of the screwdriver.

As they struggled, the victim told the appellant not "to do this," and that he was a good person. She offered to give him money to leave. The appellant repeatedly tried to pull the victim's pants down, and she repeatedly pulled them back up. The appellant then said, "enough of this," and "half carried" the victim to the living room. He forced her onto a sofa and, against her resistance, pulled off her pants and underwear. After the appellant told her that he would leave if she performed oral sex on him, the victim attempted to do so, but the appellant could not sustain an erection. The appellant then took the victim upstairs to a guest bedroom. He again forced her to perform oral sex on him, briefly performed oral sex on her, and repeatedly attempted to have intercourse with her. According to the victim, the appellant did insert his penis into her vagina.

The appellant became upset and told the victim, "don't worry, I'm not going to kill you." In an attempt to escape, the victim offered to make breakfast. They went downstairs to the kitchen. She made scrambled eggs for the appellant and put them on the kitchen counter for him to eat. She then walked out the front door and kept going until she reached an Exxon gas station and called 911.

After speaking with police officers the victim was taken to a hospital for a forensic examination, which revealed two facial abrasions and some vaginal lacerations. The time the victim might have sustained the vaginal lacerations could not be determined. Naomi Lobosco, who was accepted as an expert

in forensic biology and serology, including DNA testing and analysis, testified that the appellant was identified as "the minor contributor" to a "mixed DNA profile" obtained from the interior front panel of the victim's underwear.

Officer James Herman of the Montgomery County Police Department went to the victim's home. He smelled fresh eggs and saw a plate of eggs in the kitchen. He found muddy footprints on a stairwell. The living room couch was "messed up" and the pillows were strewn about. The bed in the guest bedroom was unmade and the pillows there were also strewn about.

At 3:09 p.m. on February 5, Special Agent Larry Lee Willis of the Virginia State Police stopped a van traveling southbound on I–81 in Montgomery County, Virginia. After obtaining a search warrant, Agent Willis found documents bearing the appellant's name and a screwdriver.[2] When shown the screwdriver during the trial, the victim testified that it "could be [the screwdriver used during the assault], but I can't swear that that's what it was."

### Discussion

### I.

The appellant first contends that the court erred in instructing the jury on one of the aggravating factors necessary to prove first degree rape and first degree sexual offense, because it was not generated by the evidence. Rape in the first degree requires the State to prove that a defendant 1) "engage[d] in vaginal intercourse with another by force, or the threat of force, without the consent of the other," and 2) that the defendant did at least one of the following:

(i) employ or display a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon;

---

2. Agent Willis did not explicitly testify that the appellant had been driving the van or that the appellant had been arrested.

(ii) suffocate, strangle, disfigure, or inflict serious physical injury on the victim or another in the course of committing the crime;

(iii) threaten, or place the victim in fear, that the victim, or an individual known to the victim, imminently will be subject to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping;

(iv) commit the crime while aided and abetted by another; or

(v) commit the crime in connection with a burglary in the first, second, or third degree.

Md.Code (2002), § 3–303 of the Criminal Law Article ("CL"). Sexual offense in the first degree requires proof that the defendant "engage[d] in a sexual act with another by force, or the threat of force, without the consent of the other," plus at least one of the same list of aggravating factors. CL § 3–305.

At trial, the appellant agreed with the State that the jury should be instructed on factors (i) and (iii) as to first degree rape, but objected to the jury being instructed on factor (ii). The State argued, and the court found, that factor (ii) was generated by the victim's testimony that, while they were struggling in the foyer area of her home, the appellant

was able to hold me down and turn around and lock the front door. And I was trying to pull and kick and scream and he just said, "You'd better be quiet." *And he had this, by my neck* and I was like, "No, you don't want to do this."

(Emphasis supplied). With regard to first degree sexual offense, the State again requested that the court instruct on factors (i), (ii), and (iii), and the appellant agreed. The appellant did not renew his objection to the jury being instructed on factor (ii) after the instruction had been given. On the contrary, after the judge instructed the jury, she called counsel to the bench and asked whether they were satisfied with the instructions. The appellant's trial counsel replied, "Satisfied, Your Honor."

Maryland Rule 4–325(e) ordinarily requires counsel to object to a jury instruction promptly *after* the court has given

the instruction. The appellant relies on *Bowman v. State*, 337 Md. 65, 650 A.2d 954 (1994), and *Gore v. State*, 309 Md. 203, 522 A.2d 1338 (1987), for the propositions that substantial compliance with Rule 4–325(e) can be sufficient and that it is not necessary to renew an objection after the court has given the instructions if doing so would be "futile or useless." The appellant ignores the fact that his trial counsel agreed with the State that the jury should be instructed on factor (ii) with regard to first degree sexual offense and told the court he was "satisfied" with the instructions as they had been given.

In *Robinson v. State*, 209 Md.App. 174, 58 A.3d 514 (2012), *cert. denied*, 431 Md. 221, 64 A.3d 497 (2013), we explained the reasons why Rule 4–325(e) requires objections to be made promptly *after* instructions have been given:

There are good reasons for requiring an objection at the conclusion of the instructions even though the party had previously made a request. If the omission is brought to the trial court's attention by an objection, the court is given an opportunity to amend or correct its charge. *Moreover, a party initially requesting a particular instruction may be entirely satisfied with the instructions as actually given.*

*Id.* at 199, 58 A.3d at 529 (emphasis supplied) (quoting *Johnson v. State*, 310 Md. 681, 686, 689, 531 A.2d 675, 677, 679 (1987) (finding objection to instruction was not preserved in part because, after instruction had been given, defense counsel "specifically stated that he had 'no exceptions' to the instruction")). By agreeing with the State that the jury should be instructed on factor (ii) with regard to first degree sexual offense and by expressing his satisfaction with the instructions actually given, the appellant waived any objection and failed to preserve this issue for appellate review.

Thus, the appellant asks that we exercise our discretion to undertake plain error review. We decline to do so. We are especially disinclined to take the extraordinary step of noticing plain error where, as here, the appellant affirmatively (as opposed to passively) waived his objection by expressing his satisfaction with the instructions as actually given. More-

over, even if the appellant had preserved an objection, we would have found that the court's instructing on factor (ii) was not erroneous. All that is necessary to generate a requested instruction that is a correct statement of the applicable law and that has not been covered by other instructions is *"some evidence." See, e.g., Arthur v. State,* 420 Md. 512, 525–26, 24 A.3d 667, 675 (2011) (emphasis supplied). This is a "fairly low hurdle." *Id.* (citing *State v. Martin,* 329 Md. 351, 359–61, 619 A.2d 992, 996–97 (1993)). The victim's testimony that "he had this, by my neck" was sufficient evidence to generate the instruction.

## II.

The appellant next contends that the court abused its discretion in denying his two motions for mistrial made after the State's closing and rebuttal arguments.

### A.

The appellant's first motion for mistrial related to a screwdriver with yellow markings that Agent Willis recovered from the van he had stopped and searched in Virginia on the afternoon of February 5. The victim testified that the appellant had threatened her with a screwdriver that "had yellow on it." When shown the screwdriver Agent Willis had recovered, she testified that it "could be [the screwdriver used by the appellant], but I can't swear that that's what it was." The court admitted photographs Agent Willis had taken of the interior of the van, including the screwdriver, without objection. When the appellant objected to admission of the screwdriver itself, on the ground that the victim could not identify it as the particular screwdriver used in the attack, the court reminded the appellant that the photographs had already come in, and ruled that the screwdriver would be admitted as the screwdriver Agent Willis had recovered from the van. Nevertheless, the court prohibited the prosecutor from arguing to the jury that the screwdriver was the particular screwdriver that had been used in the attack.

Despite the court's ruling, the prosecutor argued to the jury in summation that the screwdriver in evidence was indeed the one used during the attack.

[PROSECUTOR]: And she [the victim] puts the tea kettle on the stove and when she turns around, the defendant is standing directly behind her. And she's startled, because she didn't even hear him come into the kitchen. And he says to her, "let's you and me get it on right here, right now." And she says, "that's not even funny, get out of my house." "No, come on, you and me, let's get it on." And she goes to run around her island and she's grabbed by the defendant, *who holds this screwdriver*—

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]:—to—

[THE COURT]: Sustained.

[PROSECUTOR]: Who has a screwdriver and holds it to her throat. And she realizes, she's in huge trouble and she's trapped in her house.

(Emphasis in appellant's brief).

At the conclusion of the State's closing argument, the appellant's counsel approached the bench and asked for a mistrial. The court found that the prosecutor had violated its previous ruling, but declined to grant a mistrial. Instead, the court gave the following curative instruction:

All right. With respect to the screwdriver, the State made a statement in closing argument that, that was the screwdriver that [the appellant] used. You are to disregard that argument. There was absolutely no testimony that that was the screwdriver. The victim testified that a screwdriver was used. She was not able to identify that screwdriver. So you are not to consider that screwdriver that's in evidence as the screwdriver that was used on that particular day.

The appellant contends that the prosecutor's comment that the appellant was "hold[ing] this screwdriver" was an impermissible reference to facts not in evidence. He asserts that, rather than curing any prejudice, the court's instruction made

the situation worse by highlighting the State's improper comment. The appellant maintains that he was highly prejudiced because the screwdriver directly related to one of the potential aggravating factors the jury could have found as a basis for first degree rape or first degree sexual offense—use or display of "a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon." *See* CL §§ 3-303(a)(2)(i); 3-305(a)(2)(i).

The State contends that the court was correct in denying the motion for mistrial, but submits that it did so for the wrong reasons. In the State's view, the court's previous ruling that the prosecutor could not refer to the screwdriver recovered from the van as the particular screwdriver used in the attack improperly infringed on the wide leeway afforded to prosecutors to "make any comment that is warranted by the evidence or inferences reasonably drawn therefrom." *See Grandison v. State*, 341 Md. 175, 224, 670 A.2d 398, 421-22 (1995) (quoting *Oken v. State*, 327 Md. 628, 676, 612 A.2d 258, 281 (1992)). The State maintains that a reasonable juror could have inferred from the victim's testimony and the fact that the screwdriver was recovered from the appellant's van that it was the screwdriver used in the attack.

As this Court reiterated in *Behrel v. State*, 151 Md.App. 64, 142, 823 A.2d 696, 741, *cert. denied*, 376 Md. 546, 831 A.2d 5 (2003):

> *A mistrial* is not a sanction designed to punish an attorney for an impropriety. It is rather *an extreme sanction that sometimes must be resorted to when such overwhelming prejudice has occurred that no other remedy will suffice to cure the prejudice* .... [T]he decision as to whether a mistrial is called for is contingent upon the impact of an error and not upon the motivation behind the error. *Moreover, the remarks must be a direct and contributing factor that resulted in egregious prejudice to the defendant.*

(Emphasis supplied) (internal citations and quotations omitted). We review the denial of a motion for mistrial for abuse of discretion and will reverse only where "the prejudice to the

**134**

defendant was so substantial that he was deprived of a fair trial." *Cooley v. State*, 385 Md. 165, 173, 867 A.2d 1065, 1069–70 (2005).

██ Under either the appellant's theory that the prosecutor improperly commented on facts not in evidence or the State's theory that the prosecutor properly commented on an inference reasonably drawn from the evidence, the result would be the same: we would hold that the court did not abuse its discretion in declining to grant a mistrial. Even if we were to accept the appellant's argument that the prosecutor's comment was improper, we still would hold that any potential prejudice was cured by the court's instruction that the jury "disregard" that portion of the prosecutor's argument and that the jury "not . . . consider that screwdriver that's in evidence as the screwdriver that was used on that particular day."

██ In any event, we agree with the State that the court's previous ruling prohibiting the prosecutor from arguing that the screwdriver was the screwdriver the appellant used in the attack was erroneous. Attorneys are entitled in closing argument to ask the jury to draw reasonable inferences from the evidence. *See, e.g., Wilhelm v. State*, 272 Md. 404, 412, 326 A.2d 707, 714 (1974) ("As to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range."). The victim testified that the appellant had used a screwdriver "with yellow in it" during the attack. A screwdriver with yellow markings was recovered from the appellant's van. When shown that screwdriver at trial, the victim testified that it "*could* be [the one]," but that she could not "swear that that's what it was." A reasonable juror could infer from that evidence that the screwdriver was indeed the one the appellant had displayed during the attack. The prosecutor was free to argue to the jury that the screwdriver in evidence was *the* screwdriver, just as the appellant's trial counsel was free to argue to the jury that it was not.

As the prosecutor's comment was permissible, we hold that the court did not abuse its discretion in denying the appellant's first motion for mistrial, albeit for different reasons than those stated by the court. *See, e.g., State v. Phillips,* 210 Md.App. 239, 270, 63 A.3d 51, 69 (2013) ("This Court may affirm the circuit court's decision on any ground adequately shown by the record.") (quoting *State v. Rush,* 174 Md.App. 259, 289, 921 A.2d 334 (2007), *aff'd in part and rev'd in part on other grounds,* 403 Md. 68, 939 A.2d 689 (2008)).

### B.

The appellant's second motion for mistrial came at the conclusion of the State's rebuttal. During rebuttal, the prosecutor had argued, without objection:

> Now, with respect to the credibility—because, really, ... a lot of this case comes down to what [the victim] told you, because when a rape occurs, a rape doesn't occur in front of a camera. There's only two people there. In this case, the two people who were there were [the victim] and the defendant. And yesterday, [the victim] came in and she sat here and she told you what happened. And one of the instructions that Her Honor read to you, was the credibility of witnesses instruction.

In requesting a mistrial, the appellant's trial counsel argued that the prosecutor's comments "create[d] an inference that the defendant should have gotten on the stand and told his story." The court disagreed, and found that there had been no "inappropriate references to the fact that the defendant did not testify." On appeal, the appellant again contends that the prosecutor's comments infringed on his absolute right not to testify, as guaranteed by the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Declaration of Rights.

The State contends that the prosecutor's comments were permissible, because the prosecutor never explicitly mentioned the appellant's decision not to testify. The State asks that we read the prosecutor's comments in their proper context, and

points out that the portion the appellant quotes in his brief was just the beginning of a lengthy and detailed discussion regarding the victim's credibility. This was a central issue in the case and one that the appellant's trial counsel also had discussed in closing. The State relies on the court's instruction, before closing argument, that "the defendant has an absolute, constitutional right not to testify," and that his silence "must not be held against [him] and must not be considered in any way or even discussed."

Maryland law has "long held that a criminal defendant's rights under Article 22 of the Maryland Declaration of Rights and § 9–107 of the Courts and Judicial Proceedings Article preclude comment by a prosecutor on a defendant's decision not to testify." *Marshall v. State,* 415 Md. 248, 261, 999 A.2d 1029, 1036 (2010). In evaluating whether a prosecutor has improperly commented on a defendant's election not to testify, we must determine whether "the remark [is] *'susceptible of the inference* by the jury that they were to consider the silence of the traverser in the face of the accusation of the prosecuting witness as an indication of his guilt.'" *Smith v. State,* 367 Md. 348, 354, 787 A.2d 152, 155 (2001) (quoting *Smith v. State,* 169 Md. 474, 476, 182 A. 287, 288 (1936)).

In *Smith,* a prosecution for burglary, the prosecutor delivered the following argument:

> The Judge has said that you can look backwards in this case. Look to see who ends up with the property and then you can work backwards and here if the recent unexplained possession of stolen property allows you to work backwards to conclude, hey, this guy was the thief, this guy was the burglar. In making that conclusion, ask yourself this. *What explanation* has been given to us *by the defendant* for having the leather goods? Zero, none.

367 Md. at 352, 787 A.2d at 154. The defendant's objection to this line of argument was overruled. The Court of Appeals concluded, however, that the prosecutor "went beyond the permissible comment on the absence of the evidence, and impermissibly commented directly on the defendant's failure

to testify." *Id.* at 360, 787 A.2d at 159. The Court held that this error was not harmless and, therefore, ordered a new trial.

In *Marshall,* a prosecution for narcotics distribution, the prosecutor remarked in rebuttal:

> *Mr. Marshall did not take the stand* so I ask you to take that with a great deal of caution when [defense counsel] tries to indicate a health problem for Mr. Marshall because there's no evidence of that whatsoever.
>
> . . .
>
> There are several pieces we don't have. *We don't have Mr. Marshall's thoughts* but we do have so many other pieces and when you put those pieces together, they spell out guilty.

415 Md. at 255–56, 999 A.2d at 1032–33. The State conceded in *Marshall* that the prosecutor's remarks commented upon the defendant's election to remain silent, but argued that they were permissible under the invited response doctrine. The Court of Appeals found "no impropriety in defense counsel's closing argument sufficient to warrant the prosecutor's comments on the defendant's decision not to testify," and ordered a new trial. *Id.* at 268, 999 A.2d at 1040.

In this case, the prosecutor's comments were not susceptible of the inference that the jury should consider the appellant's silence as evidence of guilt. The entire thrust of this portion of the prosecutor's discussion, which continued for four transcript pages, was that the victim was a credible witness. The remarks that "[t]here [were] only two people there" and that one of those people, the victim, "came in and . . . sat here and . . . told you what happened," are properly read as a submission that the victim should be believed because she was the only eyewitness other than the appellant. The prosecutor did not suggest that the jury should take any negative inference from the fact that the appellant chose not to testify, or that the appellant had any burden to tell his side of the story. The court did not abuse its discretion in denying the appellant's second motion for mistrial.

## III.

The appellant also contends that the court abused its discretion in postponing trial beyond the 180–day *"Hicks* deadline" and in subsequently denying his motion to dismiss on that basis. The parties agree that the *Hicks* date in this case was November 14, 2011, which was also the scheduled trial date. The State filed a motion to postpone trial on October 14, 2011, on the grounds that a DNA analyst was scheduled for training and would be unavailable to testify and the prosecutor was scheduled for trial in another case the same day that had to be tried by November 22 pursuant to the Interstate Agreement on Detainers ("IAD"). *See* Md.Code (1999, 2008 Repl. Vol.), §§ 8–401, *et seq.,* of the Correctional Services Article ("CS").[3] The appellant opposed that request on October 19, 2011, asserting that the prosecutor "should have been aware of the conflict in scheduling at the time the trial date was set," and claiming that he would be prejudiced by the delay because the total prison time he might ultimately serve was "in a state of uncertainty" due to a looming parole revocation in another matter that was being held in abeyance pending resolution of this case. At a motions hearing on October 20, 2011, the trial judge in this case initially declined to grant a postponement, but then, at the State's request, allowed the parties to go before the acting administrative judge.

The acting county administrative judge held a hearing later that day, at which counsel made the same arguments as they had in their written motions and in argument before the trial judge. The acting administrative judge found good cause to postpone the case beyond November 14.

---

3. The pertinent provision of the IAD is similar to the *Hicks* rule. CS § 8–405(a) states that a person who is imprisoned in one state, against whom a detainer has been lodged by another state, may request "final disposition" of the case giving rise to the detainer. The jurisdiction lodging the detainer then "shall" bring the prisoner to trial within 180 days after receipt of the request, except that a court of that jurisdiction may grant "any necessary or reasonable continuance" for "good cause shown." Good cause must be shown in open court and in the presence of the prisoner or his attorney.

Trial ultimately began on March 12, 2012. On that day, the parties litigated a motion to dismiss for denial of speedy trial rights that the appellant had filed on March 8, 2012. The appellant argued that the Montgomery County Criminal Differentiated Case Management Plan prohibited the acting administrative judge from reconsidering the trial judge's initial decision not to grant a postponement. The prosecutor did not dispute this, but claimed that she had been unaware of the "new" policy. The trial judge declined to disturb the acting administrative judge's decision and denied the motion to dismiss.

Maryland law requires that a criminal case be brought to trial within 180 days of the appearance of counsel or the appearance of the defendant before the circuit court, whichever occurs first. *See* Md.Code (2001, 2008 Repl. Vol.), § 6–103 of the Criminal Procedure Article ("CP"); Md. Rule 4–271(a). A county administrative judge or that judge's designee may, however, grant a postponement beyond the 180–day deadline "for good cause shown." *Id.* Dismissal is the appropriate remedy where the State fails to bring the case to trial within the 180–day period and good cause has not been established. *State v. Hicks,* 285 Md. 310, 318, 403 A.2d 356, 360 (1979), *on motion for reconsideration,* 285 Md. at 334, 403 A.2d at 368 (1979). "[T]he critical postponement for purposes of Rule 4–271 is the one that carries the case beyond the 180 day deadline." *See State v. Brown,* 355 Md. 89, 108–09, 733 A.2d 1044, 1054 (1999). On review of an administrative judge's decision to postpone for good cause, "the trial judge (as well as an appellate court) shall not find an absence of good cause unless the defendant meets the burden of demonstrating either a clear abuse of discretion or a lack of good cause as a matter of law." *See State v. Frazier,* 298 Md. 422, 454, 470 A.2d 1269, 1286 (1984).

In this case, the acting administrative judge's good cause finding was based on the State's representations that a

DNA analyst would be unavailable [4] to testify on the scheduled trial date and that the prosecutor was scheduled for trial in another case on the same day that was legally required to be tried by November 22. We cannot say that the acting administrative judge clearly abused his discretion.

At the hearing before the acting administrative judge, the appellant's counsel argued that the appellant's "rights" should not "take [a] backseat" to those of the defendant in the prosecutor's other case scheduled for the same day. We note first that "the mechanism of the *Hicks* Rule serves as a means of protecting society's interest in the efficient administration of justice. The actual or apparent benefits [CP § 6–103] and Rule 4–271 confer upon criminal defendants are purely incidental." *See State v. Price*, 385 Md. 261, 278, 868 A.2d 252, 262 (2005). In other words, unlike the Sixth Amendment speedy trial guarantee, the *Hicks* rule is a statement of public policy, not a source of individual rights.

Furthermore, the Court of Appeals has upheld a Rule 4–271 good cause finding based upon the unavailability of a prosecutor due to her involvement in other cases. *See State v. Toney*, 315 Md. 122, 135, 553 A.2d 696, 703 (1989). The State is not necessarily required to resolve schedule conflicts by reassigning prosecutors, because "the State's interest in maintaining prosecutorial continuity is a significant interest which in some instances may qualify as good cause for a postponement." *Id.*

As the prosecutor in this case was scheduled to try two cases on the same day, it was inevitable—barring a guilty plea in one of the cases—that at least one of them would have to be postponed. Both cases were subject to similar 180–day trial deadlines. We are not in a position to second-guess the acting administrative judge's decision to postpone one case instead of the other. The basic premise behind CP § 6–103's direction

---

4. "Unavailability" is used here in a generic sense, not to be confused with the specific definition of witness unavailability contained in Md. Rule 5–804(a).

that authority to postpone cases beyond the 180–day deadline should be transferred from any judge to the county administrative judge or that judge's designee is that

> it is the administrative judge who has an overall view of the court's business, who is responsible "for the administration of the court," who assigns trial judges, who "supervise[s] the assignment of actions for trial," who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel.

> Consequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for the postponement of a criminal case exists. . . . When he postpones a case, he is generally aware of the state of the docket in the future, the number of cases set for trial, and the normal time it will likely take before the case can be tried.

*Frazier,* 298 Md. at 453–54, 470 A.2d at 1285–86 (footnotes omitted).

 The appellant also insists that the acting administrative judge abused his discretion because his reconsideration of the trial judge's initial decision not to grant a continuance violated the Montgomery County Criminal Differentiated Case Management Plan ("DCM"). This argument fails for a number of reasons. We are not persuaded that violation of a county DCM (as opposed to violation of Rule 4–271) would mandate dismissal. Furthermore, it is not clear to this Court that the DCM prohibits the acting county administrative judge from reconsidering a trial judge's initial decision in a complex criminal case to deny a request for postponement. Instead, the DCM provides that the trial judge "will initially hear or review" the request and allows the trial judge to deny the motion or recommend that it be granted, in which case a procedure is prescribed for the acting administrative judge to grant or deny final approval. There is no explicit provision that the administrative judge lacks authority to reconsider a request for postponement that the trial judge has denied. In

any event, at the October 20 hearing before the trial judge, the judge specifically asked the appellant's counsel whether he agreed that the State had the right to petition the administrative judge for a postponement, and he replied, "I do." The appellant therefore waived any future objection to the administrative judge's authority to reconsider the trial judge's initial decision.

The appellant's reliance on *Calhoun v. State*, 299 Md. 1, 472 A.2d 436 (1984), is also misplaced. Calhoun's case had been severed from a co-defendant's, but both remained scheduled for trial on the same day—five days before the 180–day *Hicks* deadline expired. On the scheduled trial date, the prosecutor elected to proceed against the co-defendant on an unrelated matter, meaning that Calhoun's case would have to be postponed. Rather than sending the prosecutor and Calhoun to the administrative judge to seek a postponement, the trial judge merely "excused" Calhoun. The administrative judge held a hearing fifteen days after the 180–day deadline had expired and implicitly found good cause and ordered a postponement. Calhoun eventually was tried and convicted. On appeal, the Court of Appeals expressed no opinion as to whether good cause existed at the time of the *de facto* postponement by the trial judge. Instead, the Court held that dismissal was warranted because no action was taken by the administrative judge or his designee before the 180–day period expired and the administrative judge could not ratify the trial judge's postponement after the 180–day period had expired. In the case before us, the acting county administrative judge properly found good cause for a postponement before the 180–day period expired.

The trial judge correctly declined to reconsider the acting administrative judge's finding of good cause. As the Court of Appeals noted in *Frazier*,

> with regard to the postponement of a criminal trial for good cause, it is the administrative judge's exercise of judgment with which those later reviewing the matter are concerned. Another nisi prius judge, ruling on a motion to dismiss for an alleged violation of [CP § 6–103 and Rule 4–271], has

been deprived of the authority to exercise independent judgment concerning good cause for postponement.

298 Md. at 450, 470 A.2d at 1284. As the acting county administrative judge had found good cause and ordered a postponement beyond the *Hicks* deadline, before the *Hicks* deadline passed, there was no basis for the trial judge to grant the appellant's motion to dismiss.

### IV.

The appellant finally contends that the court erred in permitting the victim's sister to testify regarding the victim's prompt complaint of sexual assault. Before the sister testified, the appellant's counsel objected on the ground that a report of sexual assault is not admissible except to rebut a defense argument that it was not prompt. The court overruled that objection and the victim's sister gave the following testimony on direct examination:

[PROSECUTOR]: On February 5 of [last] year, did there come a time when you received a phone call . . . from your sister?

[WITNESS]: Yes, I did.

[PROSECUTOR]: And can you tell the ladies and gentlemen of the jury about that phone call?

[WITNESS]: It was a Saturday morning and it was 9:15 or 9:30. [The victim] called me and I started to talk and she interrupted me and she was hysterical and said, "Ralph raped me."

[DEFENSE COUNSEL]: Your Honor, I'm going to ask for a continuing objection.

[THE COURT]: Your objection is noted and overruled.

[PROSECUTOR]: So she stated "Ralph raped me?"

[WITNESS]: Raped me.

[PROSECUTOR]: You said that she was hysterical. Can you describe a little bit more what hysterical means?

[WITNESS]: She didn't sound like herself. She was crying. She was breathy. She wasn't able to talk to me in

full sentences. I tried asking her where she was, and she just said, "The Exxon. The police are coming. The police are coming." And she couldn't get full sentences out. She asked me to call my cousin Lynn to come as well and meet her at the Exxon. Lynn is a detective, not in this county. And she just said, "Come here," and hung up. So it was very garbled and she was not making full sense.

Five transcript pages of testimony later, the victim's sister continued:

[PROSECUTOR]: Once you got to the hospital, what happened?

[WITNESS]: We sat in the emergency waiting room with the police officer and another officer, Lynn, myself and [the victim], kind of in a small area, but on opposite sides. And they took her back ... to have an exam ... And then [the victim] started texting Lynn and I. The police had left when she went back there—that she was alone. And so she was alone and that Ralph kept calling her cell phone. That she was not picking up the phone, but he kept calling her cell phone.

On appeal, the appellant continues to argue that a prompt complaint of sexual assault is not admissible unless the defense has first disputed the promptness with which the victim reported the assault. The appellant asserts that "the entire point of the prompt-report exception is to rebut an explicit or implicit argument that the complaint was not prompt." The appellant reasons that, because he never challenged the promptness of the victim's report, the sister's testimony was cumulative, unfairly prejudicial, and not harmless. The appellant further argues that the sister's testimony should have been limited to the victim's statement, "Ralph raped me," and other narrative details—such as the victim's statements that she was at the Exxon and the police were coming, her request to have her sister and her cousin go to the Exxon, her text message that she was alone in the hospital room, and her text message that the appellant was calling her—should have been excluded. The appellant also argues that the court abused its

discretion in permitting the sister to testify immediately after the victim rather than requiring the State to hold the sister in reserve until rebuttal.

The State contends that the victim's sister's testimony was admissible as a prompt complaint of sexual assault under Md. Rule 5–802.1(d). The State maintains that such complaints are admissible as substantive evidence "to contradict the inference that the failure to complain was inconsistent with the victim's trial testimony concerning the attack." The State argues that any narrative details beyond the statement "Ralph raped me" were permissible or even necessary descriptions of the circumstances under which the complaint was made. The State also argues that the final part of the sister's testimony that the appellant claims was improper—the part that came five transcript pages after her initial comments—was not covered by the appellant's continuing objection and should not be considered on appeal.

 Whether evidence was properly admitted via an exception to the hearsay rule is an issue of law that we review *de novo*. As the Court of Appeals explained in *Bernadyn v. State*, 390 Md. 1, 7–8, 887 A.2d 602, 606 (2005):

> We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. . . . Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, must be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802. Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*.

 Rule 5–802.1(d) is such an exception and allows for the admission of "[a] statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declar-

ant's testimony." As we said in *Gaerian v. State*, 159 Md.App. 527, 537, 860 A.2d 396, 401–02 (2004):

> The purpose of Maryland's prompt complaint of sexual assault exception to the rule against hearsay "is to corroborate the victim's testimony, and not simply to 'combat stereotypes held by jurors regarding nonreporting victims.'" ... The victim's complaint to another is admissible as substantive evidence to contradict the inference that the failure to complain was inconsistent with the victim's trial testimony concerning the attack.

In a "credibility battle between the defendant and the victim, the legally sanctioned function of the prompt complaint of a sexual attack is to give added weight to the credibility of the victim." *Nelson v. State*, 137 Md.App. 402, 411, 768 A.2d 738, 743 (2001). The hearsay exception has the following limitations:

> The victim must testify, the complaint must be timely, and references to the complaint "may be restricted to the fact that the complaint was made, the circumstances under which it was made, and the identification of the culprit, rather than recounting the substance of the complaint in full detail."

*Gaerian*, 159 Md.App. at 538, 860 A.2d at 402.

The appellant's contention that a prompt complaint of sexual assault is admissible only if the defendant first challenges the complaint's promptness is without merit. It is settled law that a prompt complaint of sexual assault is admissible in the State's case-in-chief.

> In prosecutions for sex offenses, evidence of the victim's complaint, coupled with the circumstances of the complaint, is admissible as part of the prosecution's case if the complaint was made in a recent period of time after the offense[.]

*State v. Werner*, 302 Md. 550, 563, 489 A.2d 1119, 1125–26 (1985). *See also Nelson*, 137 Md.App. at 409–10, 768 A.2d at 742 (citing cases). As this Court made clear in *Cole v. State*,

83 Md.App. 279, 289, 574 A.2d 326, 331 (1990), a prompt complaint of sexual assault

> *is not . . . rebuttal evidence,* because 1) it may be offered in the State's case-in-chief, 2) it is not hedged in by limiting instructions, and 3) *its admissibility is not contingent upon the defendant's doing something first . . . .* It appears that the timely complaint has evolved as a hybrid form of anticipatory rehabilitation, as *something that does not wait to respond to impeachment but instead forestalls it.*

(Emphasis supplied).

▪ In essence, the appellant is arguing that the State may make use of the hearsay exception only if the defense has first challenged one of the preconditions to the exception's applicability. The rationale for admitting a prompt complaint is not to allow the State to rebut a defendant's claim that the victim's report was not prompt; rather, it is to allow the State to forestall the inference that, because the victim did not report the assault, the victim should not be believed.[5] The requirement that the complaint be prompt is intended to ensure its trustworthiness. *See Cole,* 83 Md.App. at 293, 574 A.2d at 333 ("Both the timeliness of the complaint and the circumstances under which it is made are, of course, circumstantial guarantees of its logical relevance (and also of its trustworthiness; the two criteria here go hand in hand)."). In *Cole,* we quoted with approval from 4 *Wigmore on Evidence* (Chadbourn rev. 1972), § 1135, "Complaint of rape (continued): (A) First theory: Explanation of an inconsistency; fact of complaint is admissible," at 298–300:

> So, where nothing appears on the trial as to the making of such a complaint, the jury might naturally assume that none

---

**5.** The absence of a prompt complaint is a different matter. As the *Werner* Court explained,

> *the failure of a sex offense victim to complain* at the time of the crime or shortly thereafter is a matter "that the defense may prove" and "would weigh heavily against the state." It *is an impeaching circumstance which, if elicited by the defense, can then be explained by the State.*

302 Md. at 565, 489 A.2d at 1126 (emphasis supplied).

was made, and counsel for the accused might be entitled to argue upon that assumption. As a peculiarity, therefore, of this kind of evidence, it is only just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was not silent, i.e., that a complaint was in fact made.

This apparently irregular process of negativing evidence not yet formally introduced by the opponent is regular enough in reality, because the impression upon the tribunal would otherwise be there as if the opponent had really offered evidence of the woman's silence. Thus the essence of the process consists in the showing that the woman did not in fact behave with a silence inconsistent with her present story. The courts have fully sanctioned this analysis of the situation.

83 Md.App. at 289–90, 574 A.2d at 331.

■■■ There is simply no requirement in Maryland law that, in order for a complaint of sexual assault to be admissible, a defendant must first challenge its promptness. The admissibility of the victim's statement to her sister, "Ralph raped me," is, thus, unassailable, as the conditions of a prompt complaint were certainly met in this case. The victim testified at trial. The complaint was timely, as it was made within minutes after the victim escaped from the assault. The victim's sister's testimony was consistent with the victim's testimony and it was limited in scope. In fact, the sister gave no substantive description of the assault. The complaint itself was the statement, "Ralph raped me." The victim's sister's testimony was limited thereafter to the circumstances under which the victim made the complaint:

She didn't sound like herself. She was crying. She was breathy. She wasn't able to talk to me in full sentences. I tried asking her where she was, and she just said, "The Exxon. The police are coming. The police are coming." And she couldn't get full sentences out. . . . And she just said, "Come here," and hung up. So it was very garbled and she was not making full sense.

All of those contextual statements were properly admitted as incidental to the victim's prompt complaint of sexual assault.

██ Other testimony within that discussion was arguably unrelated to the victim's complaint of sexual assault: the victim's statement, "She asked me to call my cousin Lynn to come as well and meet her at the Exxon," and the sister's explanation, "Lynn is a detective, not in this county." The victim's statement was hearsay not covered by the prompt report of sexual assault exception. The sister's explanation was material only insofar as it explained the victim's statement. As we shall explain more fully below, this testimony was not clearly within the scope of the appellant's continuing objection to a prompt complaint of sexual assault and thus is not properly before us in this appeal. Nevertheless, even assuming that this testimony was inadmissible hearsay and was properly objected to, it posed little or no risk of prejudice to the appellant. If there was error in admitting these statements, it was harmless beyond a reasonable doubt.

The victim's sister's later testimony regarding other statements by the victim was clearly not related to the complaint of sexual assault. Accordingly, it also was not covered by the appellant's continuing objection to testimony regarding a complaint of sexual assault. Before the victim's sister testified, the appellant stated the grounds for his objection as follows:

[DEFENSE COUNSEL]: My understanding is that the State is going to call the sister of [the victim] to testify about a prompt report. We haven't done any cross-examination whatsoever saying that she delayed in reporting this incident. So I think it's premature at this point for them to call a witness to basically bolster what's already been done in this case. If we ever at some point attack the promptness of her report, then they're free in their rebuttal case to bring out the witness.

. . .

[Y]ou can't rebut something that hasn't been done. This is an anticipatory action on the State's part, which I don't

think they are allowed to do under *Parker* [*v. State*, 156 Md.App. 252, 846 A.2d 485 (2004) ].

Five transcript pages after the appellant noted a continuing objection and the victim's sister testified to the victim's prompt complaint of sexual assault, she was asked about what happened after she and the victim arrived at the hospital. She testified:

> We sat in the emergency waiting room with the police officer and another officer, Lynn, myself and [the victim], kind of in a small area, but on opposite sides. And they took her back ... to have an exam ... And then [the victim] started texting Lynn and I. The police had left when she went back there—that she was alone. And so she was alone and that Ralph kept calling her cell phone. That she was not picking up the phone, but he kept calling her cell phone.

Maryland Rule 4–323(b) provides that a "continuing objection is effective only as to questions clearly within its scope." The appellant's continuing objection was limited to testimony regarding the victim's complaint of sexual assault. The prompt complaint was limited to the victim's statement to her sister, "Ralph raped me," and the circumstances under which that statement was made. It did not include the victim's sister's recollection of statements the victim made some time later—hours later, the State suggests—when she and the victim and their cousin were waiting for the victim to be examined at the hospital. This testimony was not clearly within the scope of the appellant's continuing objection.

Not only was the subject matter of this testimony not covered by the appellant's continuing objection, but this later testimony was separated from the continuing objection by five transcript pages of testimony discussing, according to the State, "several hours of time on the day of the attack, and a long recitation of testimony utterly unrelated to the victim's prompt complaint of sexual assault." Continuing objections do not persist in perpetuity. As this Court noted in *Hall v. State*, 119 Md.App. 377, 390–91, 705 A.2d 50, 56–57 (1998):

[A]s Professor McLain points out, *if the improper line of questioning is interrupted by other testimony or evidence and is thereafter resumed, counsel must state for the record that he or she renews the continuing objection.* McLain, *Maryland Evidence,* § 103.12. Otherwise, it would be impossible for an appellate court to determine whether the trial judge regarded the continuing objection as remaining in effect. An appellate court will reverse or vacate a judgment only for judicial errors. Unless it appears that the trial judge is or should be aware, when a question is asked and no objection is voiced, that counsel is relying on the continuing objection, the appellate court cannot conclude that the judge erred in not sustaining the "continuing" objection.

(Emphasis supplied). The appellant's continuing objection was severed by the intervening testimony and not renewed. As such, the appellant preserved no objection to this testimony and we shall not consider it on appeal.

 The appellant's argument that the court abused its discretion by allowing the victim's sister to testify immediately after the victim is without merit. "[T]he conduct of a criminal trial is committed to the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." *See Bruce v. State,* 351 Md. 387, 393, 718 A.2d 1125, 1127 (1998). *See also* Rule 5–611(a). We see nothing in this record suggesting an abuse of that discretion. As we have explained, a prompt complaint of sexual assault is admissible in the State's case-in-chief. There was no reason for the court to require the State to hold the victim's sister's testimony for rebuttal.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**